Joseph E. **BOVEY**, Warden, Nebraska State Penitentiary, Appellant,

v.

Loyd Carroll **GRANDSINGER**, Appellee.

No. 15884.

United States Court of Appeals Eighth Circuit.

April 7, 1958.

918

Ralph D. Nelson, Asst. Atty. Gen., of Nebraska (Clarence S. Beck, Atty. Gen., of Nebraska, on the brief), for appellant.

Charles H. Flansburg, Lincoln, Neb. (Eugene D. O'Sullivan, Sr., Omaha, Neb., on the brief), for appellee.

Before SANBORN, WOODROUGH and VOGEL, Circuit Judges.

SANBORN, Circuit Judge.

This is an appeal by the Warden of the Nebraska State Penitentiary from a judgment in a habeas corpus proceeding brought by Loyd Carroll Grandsinger, an inmate of that institution, held under a sentence of death imposed by the District Court of Cherry County, Nebraska, on June 16, 1954. The sentence was based upon the verdict of a jury finding him guilty of first-degree murder in the shooting and killing, on April 8, 1954, of Marvin Hansen, an officer of the State Safety Patrol, and fixing death as the penalty. On review, the Supreme Court of Nebraska affirmed the conviction and sentence. Grandsinger v. State, 161 Neb. 419, 73 N.W.2d 632.

The judgment appealed from determined that at Grandsinger's trial he had been denied effective representation by counsel, in violation of the due process clause of the Fourteenth Amendment to the Constitution of the United States, and that his sentence and the death warrant under which he was confined were therefore void.

In his petition for release on habeas corpus, filed in forma pauperis, Grandsinger (represented by counsel appointed for him by the District Court, who have also represented him in this Court) asserted that he had exhausted his remedies in the courts of the State of Nebraska; that at his trial in the District Court of Cherry County, Nebraska, his constitutional rights under the due process clause of the Fourteenth Amendment were violated: (1) in that coerced and involuntary confessions made by him between the time of his apprehension and the time he was given a preliminary hearing were received in evidence at his trial; and (2) because of an occurrence which took place on the last day of the trial, involving his chief trial counsel, the Special Prosecutor for the State, and the State trial judge, Grandsinger was deprived of effective representation by counsel.

The issues raised by the petition, the return of the Warden to an order to show cause, and the counter showing made by Grandsinger, were tried before Judge John W. Delehant, of the United States District Court for the District of Nebraska. In an exhaustive opinion (Grandsinger v. Bovey, 153 F.Supp. 201), setting forth with meticulous accuracy every proceeding, fact, matter and thing which had any bearing upon the questions presented to him, the Judge decided: (1) that Grandsinger had exhausted his State remedies (page 217 of 153 F.Supp.); (2) that the admission in evidence at his trial of his allegedly coerced confessions had not violated his constitutional rights under the due process clause of the Fourteenth Amendment (pages 226–229 of 153 F.Supp.); and (3) that the occurrence at the trial upon which Grandsinger based his claim that he was deprived of the effective representation of his counsel, did have that result and vitiated his conviction and the sentence imposed upon him (pages 239–240 of 153 F.Supp.).

The judgment from which this appeal is taken was entered July 29, 1957. It declared that the death sentence imposed upon Grandsinger was unconstitutional and void. It enjoined the execution of the sentence and discharged him from custody in so far as that depended upon the sentence and a death warrant issued by the Supreme Court of Nebraska on October 29, 1956. The judgment provided that custody of Grandsinger should be retained by the Warden pending review of the federal court judgment, and that the County of Cherry, State of Nebraska, should have six months from the date of the completion of review proceedings within which to retry Grandsinger, and provided for his continued custody during the retrial, and for his release in case there was no retrial.

The facts, inferences and the law upon which Judge Delehant based his conclusion that Grandsinger at his trial was deprived of his constitutional right to the effective assistance of counsel are fully set forth in his opinion, on pages 230–240 of 153 F.Supp.

The record on appeal shows that at Grandsinger's trial for murder in the first degree, he was represented by William C. Heelan and Charles A. Fisher, of the Nebraska bar, who had been retained by Grandsinger's father to defend him. Mr. Fisher was the principal trial attorney. Rush C. Clarke, as special prosecutor, represented the State. The trial, which had opened on June 5, 1954, was concluded on June 15. It appeared that at the time of the shooting of Marvin Hansen, near midnight of April 8, 1954, Loyd Grandsinger and his brother Leon were armed with .22-caliber pistols or revolvers. Leon was driving an automobile which they had stolen in Wyoming, and was towing an old Ford car belonging to Loyd Grandsinger, which he was guiding. The Grandsingers, on their way east from California, had committed various thefts, aside from the stealing of the automobile which was being driven by Leon, and had apparently burglarized, the night before, a store and post office at Wewela, South Dakota.

The Sheriff of Cherry County, Nebraska, had been informed as to the proposed movements of the Grandsingers on the night of April 8. Accompanied by officer Hansen in an automobile, the Sheriff overtook the Grandsingers on Highway 7 in Cherry County, and undertook to arrest them. The Sheriff took Leon Grandsinger into custody without difficulty and with no shots having been fired. Loyd left the right side of the towed automobile and sought to escape in the darkness. Hansen undertook to capture him. Shots were fired, and shortly thereafter Hansen was found, fatally wounded by a bullet which it was later discovered had pierced both the Sam Brown belt and the pants belt which he was wearing. Loyd Grandsinger fled from the scene of the shooting, but was captured by a posse the following day.

The State of Nebraska charged, and undertook to prove at the trial, that the only gun which could possibly have been

used to kill Marvin Hansen was that in the possession of Loyd Grandsinger. Both the Sheriff and Hansen carried .38-caliber revolvers. The belts worn by Hansen when he was shot were introduced in evidence. The bullet holes in the belts showed that he had not been shot by his own gun or that of the Sheriff. The medical evidence was to the effect that Hansen's death was caused by a small-caliber bullet.

It is safe to say that, in view of the State's evidence, no man ever stood in greater need of the effective aid and assistance of counsel than did Loyd Grandsinger at the close of the evidence. Apparently his only hope was that the jury might convict him of manslaughter or might, if it found him guilty of murder in the first degree, fix the penalty at life imprisonment instead of death. The likelihood of his acquittal was virtually nonexistent. Then occurred the almost incredible events which Judge Delehant concluded resulted in depriving Loyd Grandsinger of effective representation by his trial counsel.

Mr. Fisher, prior to the appearance of the jury on the last day of the trial, but after the exhibits had been brought into the courtroom, was discovered by the County Attorney of Cherry County materially enlarging, by the use of a dowel, the bullet hole in the pants belt worn by Hansen when he was shot. Mr. Fisher was taken into the trial judge's chambers. What transpired there is not shown, but can readily be inferred. Thereafter the following record was made by the Special Prosecutor, with the acquiescence of the trial judge and of Mr. Fisher, in the presence and hearing of the jury, immediately before the closing arguments in the case:

"By Mr. Clarke [the Special Prosecutor]:

"Before we proceed with the arguments, your Honor, there is a matter that has been taken up with Your Honor, which we wish to get into the record.

"The Court: Very well.

"Mr. Clarke: We wish the record to show that counsel for the defendant, is willing that it shall show, that this morning in this court room, after the court reporter had brought all the exhibits in the case out and laid them on the reporter's desk, Mr. Fisher, one of the counsel for the defendant, while he was examining Exhibit No. 10, being the leather pants belt heretofore indentified as the belt of Marvin Hansen, and that at that time he took a dowel, being one of the wooden dowels on the reporter's desk, and being either the same or one exactly like the one I am holding in my hand, which I will have to have marked as an exhibit, and pushed it violently—

"Mr. Fisher: (Interrupting) I didn't violently push it—

"Mr. Clarke: (Interrupting) pushed it through the hole in the belt hard enough so that it materially enlarged the size of the hole to an extent which cannot now be determined and that the belt, Exhibit No. 10, is not now in the same condition as it was when it was offered in evidence and received in evidence, and that the hole is now materially larger than it was before Mr. Fisher did that.

"(Mark this dowel as an exhibit, please.)

"(The wooden dowel referred to was marked as Exhibit No. 75.)

"The Court: Mr. Fisher, as I understand it you have told counsel that you did that?

"Mr. Fisher: Yes.

"The Court: You recognize that the hole is larger?

"Mr. Fisher: Yes.

"The Court: The court admonishes all counsel and everyone else and the jury when they go to deliberate upon this matter to not probe these exhibits. They can make comparisons but they cannot probe these belts with any dowel, or change the

condition of any exhibits. Very well, you may proceed."

Judge Delehant found that Loyd Grandsinger had not seen, and did not know of, Mr. Fisher's misconduct, had not participated in the proceedings relative thereto which took place in the trial judge's chambers, and was not shown to have participated in or to have given his approval of the statement the special prosecutor made a matter of record in the jury's presence.

Judge Delehant's appraisal of these events and of their effect upon the trial of Loyd Grandsinger is graphically stated by him as follows (pages 235–236 of 153 F.Supp.):

"From that ordeal in chambers, Mr. Fisher emerged manifestly beaten and crushed. What immediately ensued leaves no doubt on that score. For the state's special prosecutor, eager for the kill and with his wounded victim all too plainly acquiescent, at once set the stage and in the presence of the jury that was so shortly to pass on the petitioner's guilt and right to continue to live, recounted, and made Mr. Fisher to admit, the latter's shameful act. And Mr. Fisher readily acknowledged it with only a minor haggling over a single word, and that, in the circumstances, not really important. Nor can it be forgotten that this occurred in the presence and with the ostensible approval, however reluctantly given, of the trial judge, a matter of no little significance to the jury.

"While it has been argued on the present submission that only petitioner's own counsel, not provided by the state but employed by his father in his behalf, transgressed, and the State of Nebraska was without fault, there is no virtue in that position. It can hardly have been advanced sincerely. For, once Mr. Fisher had been overtaken in his misconduct, Mr. Clarke, who appeared and prosecuted specially for the State of Nebraska and, therefore, acted in its behalf, became the aggressor, and with studied and much too evident purpose, turned Mr. Fisher's wrong into an incident dramatically publicized in the jury's presence, to Mr. Fisher's humiliation and disgrace and petitioner's immense peril. It does not lie now with the State of Nebraska smugly and falsely to exclaim 'Shake not thy gory locks at me, nor say I did it'. Moreover, the position of the state is not wholly clear, insofar as it is rooted in the action of the trial judge. He presided over the trial, including the dragging of the errant Mr. Fisher before the jury. And he may not be wholly absolved from responsibility for the record that was then made. It is true that he was confronted with a hard choice for whose precipitation he was not at all responsible. But, whether from the standpoint of the special prosecutor or from that of the trial judge, the loss of two weeks of valuable trial time, even the hazard of the erection of a double jeopardy defense or any other allowable alternative, might well have been preferred to that which actually was done to the already hard pressed petitioner.

"In that instant and by that display, what had theretofore been an orderly trial was perverted into a virtual legal lynching. From that time forward, Mr. Fisher stood discredited before the jury in respect of petitioner's case. The argument he was shortly to make was stripped of its persuasiveness and effectively damned in the jury's estimation; for his acknowledged trickery would rise at every turn to plague him and to nullify his contentions. More directly to the point, petitioner's case itself was discredited. For implicit in the brief but startling exposure before the jury of Mr. Fisher's wrongdoing was an admission that the defense was so devoid of merit as to need gross deception and falsification of the evidence for its sup-

port. And it was in that sordid atmosphere that the closing arguments were made, the instructions were given and the case was submitted to the jury for its deliberation."

■ Judge Delehant's conclusion that the effectiveness of Loyd Grandsinger's trial counsel was destroyed by his gross misconduct in altering a material State's exhibit, and by the action of the special prosecutor in making that misconduct known to the jury before the case was submitted was, we think, fully justified. The Warden and the State of Nebraska are now in no position to claim that the action of the special prosecutor in publicizing the misconduct of Grandsinger's counsel did not have the effect that it was obviously intended to have.

The question for decision, then, is whether, in a capital case tried in a State court, a conviction and death sentence can, in view of the due process clause of the Fourteenth Amendment, be sustained notwithstanding an occurrence, such as that which took place in the Grandsinger trial, resulting in the deprivation of the effectiveness and usefulness of the defendant's counsel. There can, we think, be no serious doubt as to the answer.

■ Due process requires that a defendant on trial in a State court upon a serious criminal charge and unable to defend himself shall not be denied or deprived of his fundamental constitutional right to the effective aid and assistance of counsel. See and compare, Powell v. Alabama, 287 U.S. 45, 71–72, 53 S.Ct. 55, 77 L.Ed. 158; Avery v. Alabama, 308 U.S. 444, 445–447, 60 S.Ct. 321, 84 L.Ed. 377; Glasser v. United States, 315 U.S. 60, 70–71, 62 S.Ct. 457, 86 L.Ed. 680; Williams v. Kaiser, 323 U.S. 471, 65 S.Ct. 363, 89 L.Ed. 398; House v. Mayo, 324 U.S. 42, 46, 65 S.Ct. 517, 89 L.Ed. 739; Hawk v. Olson, 326 U.S. 271, 274–279, 66 S.Ct. 116, 90 L.Ed. 61.

It is difficult to imagine how the effectiveness of a defendant's counsel could be more completely destroyed than by causing him to confess before the jury, at the close of the evidence at the trial, that he had been guilty of gross misconduct in having tampered with the State's evidence. Because of a deprivation of due process in his State trial, Loyd Grandsinger stands presently "as a firebrand plucked out of the burning" by the Fourteenth Amendment to the Constitution of the United States.

The judgment appealed from is affirmed.