Charles R. STARKWEATHER, Relator and Plaintiff

v.

John B. GREENHOLTZ, Deputy and Acting Warden, Nebraska State Penitentiary, Respondent and Defendant.

Civ. 256 L.

United States District Court
D. Nebraska.

May 21, 1959.

Charles R. Starkweather, pro se.

C. S. Beck, Atty. Gen., for Warden of Neb. State Penitentiary.

VAN PELT, District Judge.

This matter is before the Court upon an application and petition for writ of habeas corpus filed by Charles R. Starkweather, plaintiff in error in the case decided by the Nebraska Supreme Court December 19, 1958 and reported in Starkweather v. State, 167 Neb. 477, 93 N.W.2d 619. The request to file and proceed in forma pauperis was considered immediately upon presentation and the Court has ordered the filing of said application and affidavits attached without prepayment of costs. At the same time it was ordered that there be filed certain letters hereafter mentioned, which in a sense constitute also an application for the writ and contain what the parents regard as supporting evidence.

It appears that the execution, stay of which is requested, is scheduled for Friday, May 22, 1959 at 6 A.M.

At two o'clock P.M. on May 20, 1959 an oral request was made by Guy W. and Helen Starkweather, parents of Charles R. Starkweather, for such a writ. The Court was alerted to the letter signed by the son which has been filed herein. This letter was received at eight o'clock A.M. today, and shortly thereafter there was tendered to the Court a letter of the parents which has been sworn to by the father, to which are attached copies of letters written by the son.

While there is authority for the courts to liberally construe the statutes in a petitioner's favor and to disregard legalistic requirements (See Darr v. Burford, 339 U.S. 200, 70 S.Ct. 587, 94 L.Ed. 761) which would have to be done to a greater extent than shown in any of the reported cases in order to consider the letter above mentioned to be an application for the writ, such construction is now unnecessary in view of the typed application above mentioned.

It therefore remains for the Court to examine the application and petition and determine whether the facts alleged, giving benefit to Starkweather of all inferences therefrom, are sufficient for this Court to order a stay of the execution.

The claim, in substance, is that due process has been denied him in that he has been deprived of effective representation by counsel. This is similar in claim but not in fact to the Grandsinger case, Grandsinger v. Bovey, 8 Cir., 253 F.2d 917; D.C., 153 F.Supp. 201. The prayer in the instant application is, among other things, that the procedure of the Grandsinger case be followed.

The papers submitted indicate that as early as April 12, 1958, petitioner had indicated his dissatisfaction with the court-appointed counsel. He says in this letter: He is "mad at what my attorneys are thinking, and may be going to do." He complains that "they asked hardly anything about what i did, and their subject is, Caril"; that the attorneys are going to see "that i get convicted for '11' and the hell of it is, that i didn't do all of them"; that the attorneys would like for him to say "that i didn't know what i was talking about in statement '#2' in Caril's part of the murders", followed by the statement "I know that i'm going to pay for the cruel killings i did, but for the horrible, and the cruel ways she did it, i'm not for it at all, to pay for what she did."

He complains in his letter to the Court that the writ of habeas corpus should have been filed with the Federal Court immediately after a denial of his appeal and that he believes he has "the right of the higher court" but as it is now he is deprived of his freedom and liberty.

His parents suggest that the attorneys should have filed this application at an earlier date and claim improper representation by counsel in permitting to be told and read in detail to the jury "the event of the whole massacre"; that counsel would laugh and scorn the son, and claimed intoxication of counsel. It is important to note that intoxication during the trial is not claimed and in fact the claim of intoxication in visiting with their son at the penitentiary was limited to two or three occasions.

At this point it is to be noted that no claim of innocence of the crime is made. The Nebraska Supreme Court opinion recites the fact of at least nine murders committed by Starkweather and of one additional person who was killed it can be assumed either by Starkweather or "Caril" above mentioned.

The parents when orally presenting the matter on behalf of their son stated that they did not want freedom for their son, as was given Grandsinger, but commutation of his sentence to life imprisonment.

██ Being laymen it is not surprising that these people conceive of habeas corpus as some sort of proceeding by which this court can grant such clemency. Contrary to that belief, this court has no such power. As stated by the United States Supreme Court:

> "Discharge from conviction through habeas corpus is not an act of judicial clemency but a protection against illegal custody." Brown v. Allen, 1953, 344 U.S. 443, 465, 73 S.Ct. 397, 411, 97 L.Ed. 469.

There is thus before this court no question of clemency because this court is without power to grant clemency but only the question of whether or not Starkweather's fundamental constitutional rights under the due process clause of the 14th Amendment were violated. While he enumerates three grounds they are all based upon the claim that he was deprived of effective representation by counsel. It is claimed that they failed to make application for change of venue and present it to the District Court of Lancaster County, and that this resulted in his conviction and the imposition of the death sentence, and secondly that not all of the evidence on his behalf was presented in his trial, particularly evidence concerning Caril Fugate's participation in the crime for which he was charged. It is to be observed that no violations of his constitutional rights were assigned as error or discussed by the Nebraska Supreme Court.

It is also to be observed that petitioner did not apply for a writ of certiorari to the United States Supreme Court, in this case. However, this Court is not making its ruling based upon the failure of petitioner to exhaust the state court remedies if such is the fact. He has generally alleged that he has exhausted his state court remedies altho he does not disclose in his petition the steps taken by him. This Court concludes that its decision should rest upon the merits of the case as presented by the petitioner and not upon the question of exhaustion of state court remedies.

As to counsel's alleged inebriation, the Court would not consider the two or three occasions of alleged drunkenness at the penitentiary to constitute lack of effective counsel, even if proved. It is not alleged that this in any way hampered preparation of the case and it is not claimed that there was such inebriation at or during the trial.

As to the remaining three charges of lack of counsel's effectiveness, the Court believes that these are things which must be within counsel's discretion. As to the putting in of certain evidence, and failing to put in other evidence, and particularly the admission of the evidence of other murders, it is evident from the opinion of the Nebraska Supreme Court, above referred to, that the case was tried on the question of sanity rather than of

whether the defendant did or did not kill the person of whose death he has been convicted. Even in these proceedings it is not alleged that Starkweather did not kill that person. Counsel evidently weighed the possible prejudice resulting from admitting evidence of all the murders against the chance that such evidence would tend to prove insanity. The Court cannot say that it is any indication of lack of effective counsel that this procedure did not convince the jury.

The same is true as to counsel's effort in selecting the evidence pertaining to Caril Fugate which counsel deemed most effective in defending Starkweather.

As to failure to demand a change of venue, the Court is also of the opinion that it may not go behind counsel's judgment.

The Court does not rest its decision on the principle that Starkweather as principal is bound by his attorneys' act. The Court states merely that the facts alleged, even if true, do not show lack of effective counsel so as to deprive him of his constitutional rights guaranteed by the 14th Amendment.

It has been said that the courts strongly resist impeachment of convictions for incompetence of counsel, fearing disruption of the orderly processes of the administration of the criminal law if they permitted the innumerable judgments made by counsel in the course of a trial to be easily stigmatized as evidence of incompetence after an unfavorable verdict. A reviewing court will presume that the trial court adequately safeguarded the interests of the accused and that the attorney conducted the defense faithfully and skillfully as an officer of the court. No complaint is made here as to the general competence of the appointed counsel and this court cannot therefore conclude that the jury's verdict is proof either of the impropriety of their judgment or of their incompetence in making the defense.

It should be clear from the foregoing that clemency is for the executive branch of the state government under duly constituted state authority. Clemency is not within the province of this court on application for writ of habeas corpus. The application for the writ legally must be denied.

An appropriate order will therefore be entered.