UNITED STATES of America ex rel.
Donald TILLERY

v.

Angelo C. CAVELL, Warden, Western
State Penitentiary, Pittsburgh 33,
Pennsylvania, Appellant.

No. 13324.

United States Court of Appeals
Third Circuit.

Argued Dec. 8, 1960.

Decided July 18, 1961.

William Claney Smith, Pittsburgh, Pa., (Edward C. Boyle, Dist. Atty. of Allegheny County, Pittsburgh, Pa., on the brief), for appellant.

John P. Flaherty, Jr., East Pittsburgh, Pa., for appellee.

Before BIGGS, Chief Judge, and GOODRICH and FORMAN, Circuit Judges.

FORMAN, Circuit Judge.

This is an appeal by Angelo C. Cavell,[1] Warden of the Western State Penitentiary of Pennsylvania, from an order of the United States District Court of the Western District of Pennsylvania, discharging Donald Tillery from custody in that prison following his petition for a writ of habeas corpus.

■ At the outset we are met with a motion by Tillery to quash the appeal for lack of jurisdiction because the appellant Warden failed to obtain a certificate of probable cause in accordance with the provisions of § 2253 of Title 28 U.S.C.A., which reads in pertinent part as follows:

"An appeal may not be taken to the court of appeals from the final order in a habeas corpus proceeding where the detention complained of arises out of process issued by a State Court, unless the justice or judge who rendered the order or a circuit justice or judge issues a certificate of probable cause." [2]

While numerous decisions have held that the lack of a certificate by the petitioner deprived the court of jurisdiction on appeal our attention has not been called to any case in which the issue has been raised that it is necessary for a state or its representative to obtain the certificate nor have we found any.[3]

Section 2253 of Title 28 finds its origin in the Act of Congress of March 10, 1908, 35 Stat. 20. Congress was concerned with the abuse of the writ of habeas corpus in the federal courts resulting, it was said, in protracted appellate proceedings in frivolous cases and undue interference with state process. Ex parte Farrell, 1 Cir., 1951, 189 F.2d 540. The objective of the legislation is brightly illuminated in the following statement in the report of the Committee of the Judiciary of the House of Representatives accompanying H.R. 4777, from which § 2253 of Title 28 emanated:

"The purpose of this bill is to correct a very vicious practice of delaying the execution of criminals by groundless habeas corpus proceedings and appeals therein taken just before the day set for execution, which now obtains * * *.

* * * * * *

"* * * The attention of the committee was called to a condition existing in one of our States where petition for habeas corpus after petition and successive appeals from adverse decisions thereon in the same case had been prosecuted, involving a purely factious delay of three or four or more years. This statute makes it impossible to continue this vicious practice, as under it no appeal can be prosecuted unless either the United States court making a final decision or a justice of the Supreme Court shall be of the opinion that there exists probable cause

1. It was agreed at the hearing that pending these proceedings Mr. Cavell was succeeded by James F. Moroney as Warden and that the proceeding was to be entitled United States ex rel. Tillery v. Moroney.

2. The statute is implemented by Rule 11 (4) of this court, 28 U.S.C.A., which provides:
"In the case of an appeal from a final decision by a district court in a proceeding in habeas corpus where the detention complained of is by virtue of process issued out of a state court there must be filed with the notice of appeal in the district court a certificate by the judge who rendered the decision or by a circuit judge that there is probable cause for the appeal."

3. In a number of cases in which the state or its representative was the appellant a certificate of probable cause was filed with the appeal. United States ex rel. Almeida v. Baldi, 3 Cir., 1952, 195 F.2d 815, 33 A.L.R.2d 1407; Ellis v. Ellisor, 5 Cir., 1956, 239 F.2d 175; United States ex rel. Rogers v. Richmond, 2 Cir., 1958, 252 F.2d 807; Bovey v. Grandsinger, 8 Cir., 1958, 253 F.2d 917; United States ex rel. Westbrook v. Randolph, 7 Cir., 1958, 259 F.2d 215; Curran v. State of Delaware, 3 Cir., 1958, 259 F.2d 707. However, in Commonwealth of Pennsylvania ex rel. Woods v. Cavell, 3 Cir., 1958, 254 F.2d 816 no certificate was obtained by the respondent custodial officer and the issue was not raised.

for such appeal. That the delay of execution and punishment in criminal cases is the most potent cause in inducing local dissatisfaction, not infrequently developing into lynching, is obvious, and it is certainly the duty of Congress to eliminate so far as possible all unnecessary and factious delay, and this will be accomplished by the passage of this bill." H.R.Rep. No. 23, 60th Cong., 1st Sess. (1908).

This legislative history makes it clear that petitions to the federal courts filed by persons in state custody resulting in unnecessary delay in state proceedings was ·the evil that was sought to be remedied. Congress was not concerned with appeals in these cases taken by a state or its representatives.

■ It is true that the plain meaning of § 2253 seems to require that no appeal either by the petitioner or by the state or its representative may be taken without a certificate of probable cause. However, recent Supreme Court pronouncements make it clear that resort may be had to legislative history even where the statute is unambiguous. Thus in United States v. American Trucking Ass'ns, 310 U.S. 534, 543–544, 60 S.Ct. 1059, 1063, 84 L. Ed. 1345, it was said:

"There is, of course, no more persuasive evidence of the purpose of a statute than the words by which the legislature undertook to give expression to its wishes. Often these words are sufficient in and of themselves to determine the purpose of the legislation. In such cases we have followed their plain meaning. When that meaning has led to absurd or futile results, however, this Court has looked beyond the words to the purpose of the act. Frequently, however, even when the plain meaning did not produce absurd results but merely an unreasonable one 'plainly at variance with the policy of the legislation as a whole' this Court has followed that purpose, rather than the literal words.

When aid to construction of the meaning of words, as used in the statute, is available, there certainly can be no 'rule of law' which forbids its use, however clear the words may appear on 'superficial examination.' * * *" (Footnotes omitted.)

To the same effect are Harrison v. Northern Trust Co., 1943, 317 U.S. 476, 479, 63 S.Ct. 361, 87 L.Ed. 407 and Association of Westinghouse Salaried Employees v. Westinghouse Elec. Corp., 1955, 348 U.S. 437, 444, 75 S.Ct. 489, 99 L.Ed. 510.

The requirement that a certificate issue before an appeal could be taken was plainly a device to reduce appeals from decisions in favor of states or their officers not their appeals from decisions against them. To require a state or its officers to obtain a certificate "is plainly at variance with the policy of the legislation as a whole." We therefore hold that a state or its custodial officers are not required by § 2253 of Title 28 to obtain a certificate of probable cause before an appeal may be taken by it or them to this court from a final order of a United States District Court in a habeas corpus proceeding where the detention complained of arises out of process issued by a state court.

The genesis of this action takes us back to a payroll robbery which was perpetrated in September 1957 in Pittsburgh. Informed that he was wanted by the police for being implicated in the offense Tillery surrendered himself on October 8, 1957. He was confined in the Allegheny County Jail until October 17 or 18, 1957, when he was arraigned in the Court of Oyer and Terminer of Allegheny County, Judge Homer S. Brown presiding. Under the practice he was advised that an information charged him with armed robbery. He entered a plea of not guilty to the charge and made known to the court that he wished to have counsel assigned to him for his trial. He was thereafter indicted and his case was listed together with those of his alleged accomplices for December

12, 1957. The accomplices entered pleas of guilty. Tillery was tried to the court without a jury on the afternoon of December 13, 1957. A verdict of guilty was entered in the case and on December 16, 1957 he was sentenced to imprisonment for a term of six to twelve years. No appeal was taken from the judgment of sentence.

On November 8, 1958, Tillery filed a petition for a writ of habeas corpus in the Common Pleas Court of Allegheny County, alleging, among other things, the following: When he was brought before the Allegheny County Court for trial on December 13, 1957, Judge Homer S. Brown was told he was without counsel. He assigned his son, Byrd Brown, to represent him. The lawyer told him he was not sufficiently familiar with the case to go to trial and would ask to have it postponed until January 6, 1958. He thereupon made such a motion before Judge Brown but it was overruled. The court declared a recess until 1:30 p. m. when Tillery alleges he was returned to court but the attorney, Byrd Brown, was not present. The court thereupon appointed Carl Blanchfield to represent him. Together with his attorney he went into another court room and started to draw a jury. His attorney then told him he could plead guilty which he declined to do. His lawyer then advised him that if he went to a jury trial he would get 20 years and that it was too much work to go to a jury trial and that he was going to take a non-jury trial. He took him into the hallway and told him to sign some papers for a non-jury trial which he did. At 1:30 p. m. he was brought back to Judge Brown's court room. His lawyer advised the court the case was being tried without a jury. He was not asked any questions about the case by his lawyer as to witnesses or de-

fense. He was tried and convicted as aforesaid.

Tillery charged that he was "deprived of his liberty without due process of law in violation of the 14th Amendment to the United States Constitution" in his trial and conviction in the state court because:

"a) Trial judge denied motion for continuance after the appointment of Byrd Brown as defense counsel;

"b) Deprived of right to defense counsel wherein the trial court did not appoint defense counsel Carl Blanchfield sufficiently far enough in advance of trial to permit counsel to familiarize himself with the case and adequately prepare the defense;

"c) Trial judge failed to comply with the duty and responsibility resting on the court to protect the fundamental rights of this destitute defendant, held in custody, to appoint counsel sufficiently far in advance of trial to enable counsel adequately to prepare the defense."

He annexed a petition for the subpoenaing of five witnesses. A hearing was held before Judges Homer S. Brown and Walter P. Smart of the Court of Common Pleas on October 23, 1958 and on December 19, 1958, Judge Brown filed an opinion in which he refused the petition for a writ of habeas corpus and an order was made accordingly.

Thereafter Tillery sought to appeal in the Superior Court of Pennsylvania and in the Supreme Court of Pennsylvania from the order of the Common Pleas Court of Allegheny County without the payment of costs which was in both instances refused.[4] He sought certiorari in the United States Supreme Court which was denied on May 18, 1959. With the exception of the denial of jury

4. In United States ex rel. Embree v. Cummings, 2 Cir., 1956, 233 F.2d 188, 189, the court said:
"Where the only state remedies are inaccessible to a prisoner because of his poverty, his failure to pursue those rem-

edies does not bar him from applying to the federal courts for relief." Cited and followed in Commonwealth of Pennsylvania ex rel. Woods v. Cavell, D.C.W.D. Pa.1957, 157 F.Supp. 272, 273, affirmed 3 Cir., 1958, 254 F.2d 816.

trial to which we will allude later Tillery apparently exhausted his state remedies before applying to the United States District Court. Ex parte Hawk, 1944, 321 U.S. 114, 64 S.Ct. 448, 88 L.Ed. 572, and Darr v. Burford, 1950, 339 U.S. 200, 70 S.Ct. 587, 94 L.Ed. 761.

He thereupon filed a petition for a writ of habeas corpus in the United States District Court for the Western District of Pennsylvania making substantially the same allegations as in his petition to to the Court of Common Pleas of Allegheny County and charging that he had exhausted his remedies in the courts of Pennsylvania and the United States Supreme Court. Tillery's petition was filed on September 3, 1959. On the same day the District Court filed a memorandum opinion and order. In the memorandum it noted that " * * * in evaluating the question as to whether or not a hearing should be granted the petitioner, the court must assume all allegations in the petition to be true." It found from the allegations in the petition that counsel was not appointed for the petitioner until the date fixed for trial; that no opportunity was afforded him to properly prepare his case for trial and a continuance was refused; that court-appointed counsel required petitioner to proceed with non-jury trial against his desire; that failure to grant the continuance and appoint counsel sufficiently in advance of trial to enable petitioner to secure witnesses and prepare his defense denied the petitioner the equal protection of the laws as provided by the Fourteenth Amendment of the Constitution of the United States. These allegations, it held, justified the granting of the hearing. It then ordered that (1) Tillery should be granted leave to file his petition in forma pauperis; (2) that John P. Flaherty, Esq. be appointed as his counsel; (3) that Warden Cavell, the Attorney General of Pennsylvania and the District Attorney of Allegheny County show cause why the writ of habeas corpus should not be granted returnable before him on November 1, 1959; (4) that Tillery and all parties in

interest make ready to present witnesses, testimony, records and exhibits on November 12, 1959. It further directed the District Attorney of Allegheny County to present it with all records relating to the proceeding against Tillery including any habeas corpus proceedings on or before November 9, 1959. It also ordered subpoenas to be served upon witnesses named by Tillery in his petition, provided for service of the memorandum and order upon the parties involved and directed the Warden to produce the body of Tillery in court on "said date".

The appellant and the District Attorney of Allegheny County filed answers to the petition, denying among other things, that Byrd Brown was at any time appointed counsel for Tillery, and denying that there was a motion or request for continuance.

They further denied that Blanchfield was not appointed sufficiently in advance of the trial to permit him to familiarize himself with the case and adequately prepare the defense averring, contrary to Tillery's allegation, that he was appointed on October 17, 1957; was counsel for certain co-defendants in the case and was thoroughly familiar with all of the facts as they affected Tillery.

The docket fails to disclose that there was compliance with the time table arranged by the District Court. Upon orders for continuance the hearing came up on December 18, 1959, at which time the District Attorney offered in evidence, among others, the records required by the order of September 3 except that he did not offer the transcript of official notes of testimony of the hearing on Tillery's petition for a writ of habeas corpus to the Court of Common Pleas of Allegheny County.

The hearing proceeded in the presence of Tillery and his counsel and an Assistant District Attorney of Allegheny County represented the appellant Warden. On March 28, 1960, the District Court filed an opinion which was to serve as findings of fact and conclusions of law in which it found, among other

things, that the only evidence presented against the petitioner at the time of his trial was the testimony of "purported accomplices whose testimony, at best, would be subject to extreme scrutiny and a cautionary charge by the trial judge if a jury had been empaneled." It further found that:

"It was well established that petitioner had frequently expressed the desire concerning his wish to be tried by jury, and that he signed a waiver of trial by jury not knowing the nature of such paper. Furthermore, that counsel had not been appointed in behalf of petitioner until the day of trial, and despite a motion to postpone the case until a defense could be prepared, said motion was refused."

It concluded that:

"1. Petitioner did not clearly, intelligently, and understandably waive his right to jury trial.

"2. Petitioner did not have an opportunity to sufficiently confer and consult with trial counsel for the preparation of his trial.

"Petition for writ of habeas corpus will be granted."

An order was then entered discharging the petitioner from custody but with the proviso that the execution of the order should be stayed for a period of ninety days to give the Commonwealth of Pennsylvania the opportunity to retry him.[5]

■ On April 19, 1960, appellant filed his notice of appeal.

On May 9, 1960, a motion was filed on behalf of the appellant to include in the record of this case a transcript of the testimony taken before the Common Pleas Court of Allegheny County on October 23, 1958, on the petition by Tillery for a writ of habeas corpus which through inadvertence had not been introduced with other records of the proceedings therein and to reconsider the matter on the basis of that testimony.

The trial court held a hearing on the motion on May 19, 1960, and admitted the testimony. No ruling was made on that part of the motion which went to the reconsideration.

The inadvertent failure to lodge the testimony taken before the Allegheny County Court on the petition for habeas corpus could not be remedied by the motion for admission in the record on May 19, 1960 for with the filing of the notice of appeal herein on April 19, the District Court lost jurisdiction over the case. Smith v. Pollin, 1952, 90 U.S.App.D.C. 178, 194 F.2d 349, 350; In re Federal Facilities Realty Trust, 7 Cir., 1955, 227 F.2d 651, 653–654; Schempp v. School District of Abington Township, Pa., D.C. E.D.Pa.1959, 184 F.Supp. 381, 383.

■ The admission of the transcript was not a permissible correction of a mistake as contemplated by Rule 60(a) of the Federal Rules of Civil Procedure,[6] 28 U.S.C.A.

The record of the testimony before the Allegheny County Court became lost to the scrutiny of the trial court and is likewise not properly before us as part of the record on appeal.

The findings of the Allegheny Court of Common Pleas upon that testimony were, however, properly introduced into the record in the form of its opinion. From it we learn that it arrived at findings of disputed facts before it in diametric opposition to those found by the

---

5. Later he was released on bond pending the determination of this appeal and his retrial in the Allegheny Court if that was required.

6. Rule 60(a) Federal Rules of Civil Procedure provides as follows:
   "(a) *Clerical Mistakes*. Clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party and after such notice, if any, as the court orders. During the pendency of an appeal, such mistakes may be so corrected before the appeal is docketed in the appellate court, and thereafter while the appeal is pending may be so corrected with leave of the appellate court."

trial court on identical issues. The County Court found:

"* * * [I]t is a matter of record that at the time of relator's arraignment in the Court of Oyer and Terminer on October 17, 1957, the relator was asked if he had counsel. The relator having said he had no counsel, Mr. Carl Blanchfield, Esquire, of the Allegheny County Bar, was appointed as his counsel.

"From the testimony of said Carl Blanchfield, who was called as a witness by the relator at the hearing on the petition for a writ of habeas corpus, he visited the relator two or three times while relator was in jail, after his appointment as counsel, and before the case was listed for trial on December 13, 1957; that on these occasions he discussed the facts of the case with the relator; that he familiarized himself with the facts; that upon relator's inability to give the names of any witnesses, he advised relator that he should enter a plea of guilty, and further advised him that it was for the relator to make the decision; that on December 13, 1957, the day the case was listed for trial, the Court-appointed attorney, Mr. Blanchfield, was not in Court; that the Court thereupon postponed the case until later in the day when said Attorney Blanchfield did appear; that at the request of the relator that he be tried by a jury, Attorney Blanchfield began the selection of a jury, but that before the jury selection was completed the relator with the advice of counsel, agreed to waive trial by jury and be tried non-jury.

"There is no record of any request for a postponement or continuance; on the contrary, the docket reveals a petition for non-jury trial, signed by the relator, by his counsel, by the Assistant District Attorney, and approved by the Court. The relator admitted that he signed such a request."

The County Court concluded, among other things, that:

"The contention that the relator was deprived of due process of law by reason of the fact that he was refused a postponement in order to enable his counsel to properly represent him, is wholly without merit."

In granting the writ the District Court gave as one of its reasons that "petitioner did not clearly, intelligently and understandably waive his right to jury trial." It apparently held that such a right was guaranteed by the Fourteenth Amendment and cited the case of Patton v. United States, 1930, 281 U.S. 276, 50 S.Ct. 253, 74 L.Ed. 854. That case, however, involved a question of jury waiver in a trial in the federal court where the Sixth Amendment was applicable.

■■ It is well settled that the Fourteenth Amendment due process clause does not guarantee the right to a jury trial in state criminal proceedings. Maxwell v. Dow, 1900, 176 U.S. 581, 20 S.Ct. 494, 44 L.Ed. 597; Jordan v. Commonwealth of Mass., 1912, 225 U.S. 167, 32 S.Ct. 651, 56 L.Ed. 1038; Fay v. People of the State of New York, 1947, 332 U.S. 261, 67 S.Ct. 1613, 91 L.Ed. 2043; Application of Tune, 3 Cir., 1956, 230 F.2d 883; Hughes v. Heinze, 9 Cir., 1959, 268 F.2d 864. It has been said that a State may partially or completely do away with a jury system without violating the Fourteenth Amendment; Jordan v. Commonwealth, supra; Hughes v. Heinze, supra. · However, while the Fourteenth Amendment does not require the State to grant a jury trial, it does require that the accused be given a fair trial. Hughes v. Heinze, supra. It is apparent then that even if as the District Court found Tillery did not "clearly, intelligently and understandably" waive his right to a jury trial, he was denied at most something which the Supreme Court has stated "may be modified by a state or abolished altogether." Palko v. State of Conn., 1937, 302 U.S. 319, 58 S.Ct. 149, 151, 82 L.Ed. 288; Brown v. State

of Mississippi, 1936, 297 U.S. 278, 56 S.Ct. 461, 80 L.Ed. 682.

Moreover there was no violation of the equal protection clause of the Fourteenth Amendment. To show such a violation Tillery would have to prove intentional or purposeful discrimination attributable to the state. Snowden v. Hughes, 1944, 321 U.S. 1, 64 S.Ct. 397, 88 L.Ed. 497; Fay v. People of the State of New York, supra; Hughes v. Heinze, supra. In the instant case Tillery neither alleged nor proved any intentional or purposeful discrimination.

That Tillery was not tried by a jury therefore was not a deprivation of his rights under either the due process or equal protection clauses of the Fourteenth Amendment of the Constitution.

■ Furthermore in his petition to the Common Pleas Court of Allegheny County for a writ of habeas corpus Tillery did not claim deprivation of a trial by jury as a ground for the denial to him of his constitutional rights. Nor is there any finding upon the subject in the opinion of the County Court. Indeed he did not assert it as a ground for the writ in the United States District Court for the petition except for minor changes was identical there with the one filed in the County Court. The point seems to have been developed for the first time by the District Court. Since the question was not presented to or decided by the County Court there has been a failure by Tillery to exhaust his state court remedies as required by Title 28 U.S.C.A. § 2254.[7]

■ Another reason given by the District Court for granting the writ of habeas corpus was its conclusion that "(p)etitioner did not have an opportunity to sufficiently confer and consult with trial counsel for the preparation of his trial." The only finding by the trial court to support this conclusion is "that counsel had not been appointed in behalf of petitioner until the day of trial, and despite a motion to postpone the case until a defense could be prepared, said motion was refused." The Fourteenth Amendment does not guarantee an accused the right to counsel in non-capital cases under all circumstances. Gallegos v. State of Nebraska, 1951, 342 U.S. 55, 64, 72 S.Ct. 141, 96 L.Ed. 86. However, where assigned counsel has been appointed by the state the accused has the right to have the effective aid and assistance of counsel. White v. Ragan, 1945, 324 U.S. 760, 65 S.Ct. 978, 89 L.Ed. 1348; McKenna v. Ellis, 5 Cir., 1960, 280 F.2d 592. Effective aid and assistance of counsel is of necessity impossible where counsel is not given reasonable time to consult with the accused and prepare the case. Avery v. State of Alabama, 1940, 308 U.S. 444, 60 S.Ct. 321, 84 L.Ed. 377; White v. Ragan, supra; Linden v. Dickson, 9 Cir., 1961, 287 F.2d 55. But as was said in Avery v. State of Alabama, supra, 308 U.S. at page 446, 60 S.Ct. at page 322:

"Since the Constitution nowhere specifies any period which must intervene between the required appointment of counsel and trial, the fact, standing alone, that a continu-

7. Section 2254 provides:
   "An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.
   "An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented." Ex parte Hawk, 1944, 321 U.S. 114, 64 S.Ct. 448, 88 L.Ed. 572; Darr v. Burford, 1950, 339 U.S. 200, 70 S.Ct. 587, 94 L.Ed. 761; Hughes v. Heinze, 9 Cir., 1959, 268 F.2d 864; Hurt v. McLeod, 10 Cir., 1958, 262 F.2d 109; Arsenault v. Gavin, 1 Cir., 1957, 248 F. 2d 777; United States ex rel. Sleighter v. Banmiller, D.C.E.D.Pa.1958, 160 F. Supp. 769.

ance has been denied, does not constitute a denial of the constitutional right to assistance of counsel. In the course of trial, after due appointment of competent counsel, many procedural questions necessarily arise which must be decided by the trial judge in the light of the facts then presented and conditions then existing. Disposition of a request for continuance is of this nature and is made in the discretion of the trial judge, the exercise of which will ordinarily not be reviewed.

"But the denial of opportunity for appointed counsel to confer, consult with the accused and to prepare his defense, could convert the appointment of counsel into a sham and nothing more than a formal compliance with the Constitution's requirement that an accused be given the assistance of counsel. The Constitution's guarantee of assistance of counsel cannot be satisfied by mere formal appointment."

And in Baldwin v. United States, 4 Cir., 1958, 260 F.2d 117, 118, certiorari denied 1959, 360 U.S. 938, 79 S.Ct. 1463, 3 L.Ed.2d 1550, the court said:

"* * * What may be a reasonable time in one case can be quite unreasonable in another, and the sufficiency of the time depends upon what is disclosed to counsel by his client and, in this instance, in his interviews with the witnesses for the prosecution. * * *"

It is therefore apparent that the finding by the trial court that counsel for Tillery was not appointed until the day of trial and that a postponement was denied does not in and of itself support the conclusion that Tillery was denied the effective assistance of counsel.

At the hearing in the District Court Carl Blanchfield, the attorney who represented Tillery at his criminal trial, testified that he had been engaged in active practice in the criminal courts of Allegheny County for over 15 years. He stated that he was designated Tillery's counsel on October 17, 1957; that shortly thereafter he looked at the information to obtain the primary facts; that he visited Tillery at least twice while the latter was in jail; that Tillery told him of his relationship with the armed robbery;[8] that Tillery failed to disclose to him the names of any witnesses or alibi; that Tillery later told him that he expected to get out on bond and to have another attorney, Hicks Friedman, represent him; and therefore on the day of trial, December 13, 1957, he did not expect to defend him until requested to do so by Judge Brown; that he had spoken with counsel for the other defendants involved and with Attorney Lamaya of Legal Aid who was scheduled to defend Tillery;[9] and that he believed he had sufficient facts to properly represent him.

8. Mr. Blanchfield's testimony on this point was as follows:

"It appeared to me that his story was to the effect that several weeks before this robbery of September that the group got together I believe in Thomas' kitchen. They had laid out this plan. They made a preliminary run checking the date of the messenger going from the Buncher Company to the bank and they had timed that pretty well. And after they had scheduled it according to the time that the messenger did this to get the payroll, they then set up a particular date. There were two cars, a couple in each car. They expected to have the robbery at the bank. And it seemed that the messenger came out of the bank in a hurry, got in the car, and started up and away he went. There wasn't enough time to have the robbery occur at the bank. But they went back to the Buncher Company and shortly afterwards, after the messenger went into the Buncher Company, according to the story of Tillery, he came to the door and then turned away.

"So, I told Tillery, this was my advice to him, that under those circumstances I thought that he would probably be found guilty, but he could plead guilty on the theory that he had not completed the crime, but he could be considered and indicted as an accessory before the fact to the robbery."

9. The record discloses that Tillery testified that when Mr. Lamaya, assigned by the Legal Aid to represent him, ap-

At the same hearing Tillery testified that he saw Mr. Banchfield only once and did not discuss the case with him and that on the morning of the date set for trial he had no attorney. This was communicated to Judge Homer S. Brown, who was presiding and who sent his son, Byrd Brown, over to speak to him; Mr. Byrd Brown looked at some notes of his case that he had made; that Mr. Brown requested the court to grant a continuance in order to acquaint himself with the case, but that it was refused; and that he made no objection to being represented by Mr. Blanchfield nor did he ask him to ask for a continuance because he felt that it would be futile.

Mr. Brown testified that he had no knowledge of any appointment to represent Tillery; that he made no appearance for him and that he made no motion, oral or written, for a continuance.

■■ The testimony was in direct conflict and we fully recognize that it was for the trial judge to determine the credibility of the witnesses in resolving the disputed evidence. The finding of fact that "counsel had not been appointed until the day of trial, and despite a motion to postpone the case until a defense could be prepared, said motion was refused," was too limited and there should be explicit findings of the facts that lead to the conclusion that counsel was unable to effectively represent Tillery otherwise than only from his being appointed on the trial day. We have seen that time is relative in such a situation and a brief period could be adequate if other factors qualifying counsel to render effective service were present. Thus in Baldwin v. United States, supra, six hours were found to be sufficient in which to prepare.

The case will be remanded for the finding of additional facts as indicated above.

There is, however, an additional reason to remand. It is apparent that the District Court went directly to a hearing in this case independently of the evidence taken by the County Court on the substantially identical petition and issues raised before it.[10] In Brown v. Allen, 1953, 344 U.S. 443, 503–504, 73 S.Ct. 397, 444, 97 L.Ed. 469, Justice Frankfurter, speaking for a majority, proposed criteria for determining when it is proper to hold a hearing in a federal District Court upon a petition for habeas corpus when the petitioner is in state custody. He said:

> "*Third.* If the record of the State proceedings is not filed, the judge is required to decide, with due regard to efficiency in judicial administration, whether it is more desirable to call for the record or to hold a hearing. Ordinarily, where the issues are complex, it will be simpler to call for the record, certainly in the first instance. If the issues are simple, or if the record is called for and is found inadequate to show how the State court decided the relevant historical facts, the District Court shall use appropriate procedures, including a hearing if necessary, to decide the issues.
>
> "Such flexibility in the inquiry into the facts is necessary. A printed record reflecting orderly procedure through the State courts and showing clearly what has happened in the State courts is rarely available in these cases. The effort and expense of calling for a record and

---

proached him for that purpose he declined his representation saying, "Well, sir, you can't very well represent me and Raymond because Raymond was guilty."

10. In the discussion in the hearing on the petition to include the transcript of the habeas corpus proceeding in the Allegheny County Court the District Court commented:

"Well, what value is the testimony, number one, and—that was introduced in another court of record? Number two, what is its relevancy, if it is not to be used for impeachment purposes? And number three, all habeas corpus proceedings are heard de novo, and I fail to follow the purpose of your offer."

of having a transcript of the proceedings prepared might be more burdensome than a short hearing, especially where the questions of fact are simple and easily settled. It seems an unnecessary deference to State proceedings to say that the District Judge, regardless of the relative expense of one procedure or the other, must always call for everything in the State proceedings. To satisfy requirements of exhaustion he will want to know enough to know whether the claim presented to him was presented in the State courts. But if the claim is either frivolous or, at the other extreme, substantial and if the facts are undisputed, to call for the State record would probably avail little. If the claim is frivolous, the judge should deny the application without more. If the question is one on which he must exercise his legal judgment under the habeas corpus statute, it may be sufficient to have information, perhaps presented by the pleadings of the applicant or of the State, as to the disposition of any disputed questions of fact. It seems unduly rigid to require the District Judge to call for the State record in every case.

"Moreover, the kinds of State adjudications differ. In some cases the State court has held a hearing and rendered a decision based on specific findings of fact; there may have been review by a higher State court which had before it the pleadings, the testimony, opinions and briefs on appeal. It certainly would make only for burdensome and useless repetition of effort if the federal courts were to rehear the facts in such cases. At the other pole is the perfunctory memorandum order denying a badly drawn petition and stating simply that the petitioner is not entitled to relief. The District Judge cannot give the same weight to this sort of adjudication as he does to the first; he has no basis for exercising the judgment the statute requires him to exercise "

In the instant case the record of the hearing before the Allegheny County Court on the petition for habeas corpus was available. Indeed, the District Court at the outset called for it, but failed to pursue its directive in the face of the inadvertent failure to produce it. Here the facts were neither undisputed nor simple and since the findings of the County Court were said by it to be based upon testimony taken at its hearing the District Court should have first scrutinized the County Court's record to determine the weight to which its findings were entitled in the exercise of the judgment required by the statute.

Upon examining the record the District Court could have accepted the historical findings of fact tried and adjudicated against Tillery unless that record disclosed a vital flaw in the process of ascertaining them in the County Court and could have dismissed the petition. It should be borne in mind, however, that state adjudication of questions of law cannot be accepted as binding. Brown v. Allen, supra, 344 U.S. at page 506, 73 S.Ct. at page 445. On the other hand the District Court was not bound by the determination of facts by the County Court and was free in its discretion to take testimony. Brown v. Allen, supra; United States ex rel. Rogers v. Richmond, 1958, 357 U.S. 220, 78 S.Ct. 1365, 2 L.Ed. 2d 1361; United States ex rel. De Vita v. McCorkle, 3 Cir., 1954, 216 F.2d 743; Stickney v. Ellis, 5 Cir., 1961, 286 F.2d 755; Linden v. Dickson, 9 Cir., 1961, 287 F.2d 55; but see United States ex rel. Rogers v. Richmond, 2 Cir., 1958, 252 F.2d 807, certiorari denied 1958, 357 U.S. 220, 78 S.Ct. 1365, 2 L.Ed.2d 1361 and United States ex rel. Rogers v. Richmond, 2 Cir., 1959, 271 F.2d 364, reversed on other grounds 1961, 365 U.S. 534, 81 S.Ct. 735, 5 L.Ed.2d 760.

Since the testimony in the County Court is at hand, on this remand, the Dis-

trict Court should now properly admit it. It should be examined by the District Court to determine whether the historical findings based thereon should be accepted. If so, it may decide to dismiss the petition. Adverting again to Justice Frankfurter's directions in Brown v. Allen, supra:

"In exercising the power thus bestowed [jurisdiction in habeas corpus cases], the District Judge must take due account of the proceedings that are challenged by the application for a writ. All that has gone before is not to be ignored as irrelevant. * * *" 344 U.S. at page 500, 73 S.Ct. at page 443.

■ While it is true that the District Court may exercise its discretion to hold a hearing and make independent findings of fact we believe that the basic teaching of Brown v. Allen, supra, requires that the discretion reposed in the District Court should be exercised with caution. The findings and the record of the State court should be considered to ascertain whether there are disclosed specific questions of incompleteness, inconsistency or credibility which suggest the likelihood of improperly resolved constitutional issues and justify federal intervention. Note, Federal Habeas Corpus, 68 Yale L.J. 98 (1958). State adjudications following a full hearing as purportedly held here are entitled to greater weight than findings contained in per curiam opinions of appellate courts or in summary denials of state writs of habeas corpus. Brown v. Allen, supra, 344 at page 504, 73 S.Ct. at page 444. Cf. United States ex rel. Blank v. Jackson, 2 Cir., 1959, 263 F.2d 185.

In summary the District Court should admit the transcript of the record before the Court of Common Pleas of Allegheny County and consider it and the findings made thereon. If, applying the foregoing criteria, it is satisfied that federal intervention was not required it may enter its order dismissing the petition. If not so satisfied it may resort to the record of the hearing already held and make the more definitive findings heretofore required.

The judgment of the District Court will be vacated and the cause remanded for further proceedings not inconsistent with this opinion.