Commonwealth ex rel. Gerchman, Appellant, *v.* Maroney.

Argued April 14, 1964. Before ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ. (RHODES, P. J., absent).

*Hymen Schlesinger,* with him *M. Y. Steinberg,* for appellants.

*Edward J. Tocci,* Assistant District Attorney, with him *Robert J. Masters,* District Attorney, for appellee.

OPINION BY ERVIN, J., June 11, 1964:

In these two appeals in habeas corpus proceedings an attack is made upon the constitutionality of the Barr-Walker Act, January 8, 1952, P. L. (1951) 1851, 19 PS. §1166. They were argued together and will be disposed of in one opinion.

An examination of the original trial records will show that on August 29, 1962 Carl G. Gerchman plead guilty to the charge of assault with intent to ravish and on December 14, 1962 he was sentenced under the provisions of the above mentioned act to "pay the costs of prosecution, a fine of $1.00, be committed to the Western Correctional Diagnostic and Classification Center to undergo imprisonment of not less than one day nor more than the term of the natural life of the said Carl G. Gerchman. . . ." No direct appeal was taken from this sentence. Gerchman had been represented at his plea of guilty and sentence by an attorney of his own choice. On November 13, 1963, approximately eleven months after the original sentence, he

filed a petition in the court below in a habeas corpus proceeding. On February 4, 1964 the writ of habeas corpus was dismissed and thereafter the present appeal was taken.

Delmas McFadden was found guilty by a jury on October 1, 1955 of the crimes of sodomy and solicitation to commit sodomy. On December 6, 1955 he was sentenced, under the provisions of the above mentioned act, "to pay the costs of prosecution, a fine of $1, and committed to the Western Correctional Diagnostic and Classification Center to undergo imprisonment of a minimum of not less than one day and a maximum of his natural life. . . ." No direct appeal was taken from that sentence. McFadden had been represented at his trial and sentence by two lawyers of his own choice. The opinion of the court below states that McFadden was subsequently released on parole and thereafter recommitted by the Board of Parole. On November 13, 1963, approximately eight years after the original sentence, he filed a petition in the court below in a habeas corpus proceeding. On February 4, 1964 the writ of habeas corpus was dismissed and thereafter the present appeal was taken.

In the habeas corpus proceedings both defendants were represented by two attorneys who had not represented the defendants originally.

An examination of the original record in the Gerchman case reveals that on Saturday, July 28, 1962, at about 4:30 or 5:00 o'clock in the afternoon, he saw a young girl standing on the corner; he stopped his car and asked her if she wanted to go for a ride with him; she told him she was waiting for someone who was to take her to see about getting work; he then told her that he was the person who was sent to take her to the place for the work; she then got in the car and he drove her to a wooded section; he tried to get her to respond to his advances but she refused to do so; he

then hit her in the face, grabbed her by the hair, some of which came out, tore off her clothing and tied her naked body to a tree; he bit her breasts and then with a piece of broken glass cut the letter "K" on one of her breasts; he left her for a short while but then returned and untied her, placing his shirt upon her naked form, and before leaving buried her torn clothes and belongings in the ground; he then drove her back to town and let her out.

An examination of the original record in the McFadden case reveals that for approximately ten years he had been engaged in homosexual practices with approximately 40 different boys. His usual practice was to pick up two or three boys in his car, drive across the state line into Ohio, visit a tavern or a night show, drink freely of beer and wine and then enjoy a party in the fields or in the car with the young boys in which he would practice active fellatio upon them. This type of activity took place almost every weekend, weather permitting. He also provided the boys with money from time to time as they requested it. In recent years the boys threatened to expose him if he did not give them money and he himself admitted that he was paying out about $100.00 a month in this way. A psychiatric study revealed that he was a man of average intelligence and entirely free of mental symptoms. He was classified as an aggressive sex deviate.

One of the most difficult tasks that the writer of this opinion faced as a trial judge was the problem presented by sex deviates. The sentence to an ordinary jail usually resulted in the person, after serving his term, coming out of jail in worse condition than when he entered. The other prisoners seemed to learn, as soon as he entered jail, the type of individual that he was and the relationship between them was bad for both. The Barr-Walker Act represents an attempt by the legislature to meet this situation. The act, in the

first section thereof, states its purpose as follows: "For the better administration of justice and the more efficient punishment, treatment and rehabilitation of persons convicted of the crime of indecent assault, incest, assault with intent to commit sodomy, solicitation to commit sodomy, sodomy, assault with intent to ravish or rape, if the court is of the opinion that any such person, if at large, constitutes a threat of bodily harm to members of the public, or is an habitual offender and mentally ill, the court, in lieu of the sentence now provided by law, for each such crime, may sentence such person to a State institution for an indeterminate term having a minimum of one day and a maximum of his natural life."

Section 2 provides for a psychiatric examination of the defendant convicted of one of the above mentioned crimes, by the Department of Welfare or by a psychiatrist designated by the court and a complete written report of the findings of the court. Section 3 provides for the postponement of sentence and for the temporary confinement of the defendant for a period not exceeding 60 days, which could be extended for 30 more days for the purpose of making the psychiatric study of the defendant. This section also provides that if the examination is not made and a report given to the court within the period of temporary confinement, then the court must sentence to jail under the Criminal Code, with credit for the period of temporary confinement while the psychiatric study was being made.

Section 5 authorizes the court, after the psychiatric examination and report, to sentence the defendant under the provisions of the act to such institution as shall have been designated by the Department of Welfare in its report.

Section 6 directs the Department of Welfare to provide psychiatric and psychological services to the courts and to the Pennsylvania Board of Parole for

the examination, diagnosis and treatment of persons sentenced under the act.

Section 7 requires the Pennsylvania Board of Parole, within three months after the defendant has been sentenced under the act, and at least every six months thereafter, to cause to be brought before it all reports, records and information concerning the defendant, for the purpose of determining whether he shall be paroled, and it further provides that the defendant be notified in writing of its ruling after each one of these examinations. This section also provides that the defendant may make application for parole in the manner now provided by law.

Section 8 gives exclusive control to the Pennsylvania Board of Parole of the parole and reparole of persons sentenced under the act and further provides that the board "shall give serious consideration" to the original report and all subsequent reports of the psychiatric and psychological examinations of the defendant, the recommendations contained in such reports and the view of the committing court.

The attorneys for the appellants argue that the act is void because it imposes punishment without due process, contrary to the 14th Amendment of the Federal Constitution. We are of the opinion that the primary purpose of this act is to provide for the treatment and rehabilitation of sex deviates. Had the legislature intended only punishment, passage of the Barr-Walker Act was unnecessary because such punishment was already provided for in The Penal Code. True it is that a person who could not be cured and who continued to remain a menace to society could, under the terms of this act, be kept in confinement for the rest of his life. This is as it should be if innocent members of society are to be protected from the vicious acts of such persons. For the first time, however, our Commonwealth now has a program which might lead to the

cure and rehabilitation of some of these unfortunate individuals. Under the act we now have a program whereby such persons may be placed in special institutions staffed by psychiatrists, psychologists and other personnel to intelligently study these cases. It seems to us that the chance of finding an answer to some of these problems is greatly improved by the procedure provided for under the Barr-Walker Act. It certainly is an improvement over the former method of a flat jail sentence.

This act does not create or describe a crime. It can only be employed after a person has been convicted of one of the crimes mentioned in the act. The defendant has all of the constitutional safeguards required, such as indictment, notice, jury trial, counsel of his own choice, confrontation of witnesses and the right of compulsory process to obtain witnesses, before his conviction of one of the specific crimes mentioned in the act. All that the Barr-Walker Act does is to provide an alternate type of sentence. The legislature has the power and authority to provide any penalty for a felony so long as it is not cruel and unusual. It cannot be successfully argued that an act which provides for the study, attempted cure and rehabilitation of sex deviates is cruel or unusual punishment.

*Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 83 S. Ct. 554, 567, is not applicable to this kind of a case. In that case the act provided for the automatic removal of citizenship whenever a person departed from the country or remained outside of the country to evade military service. That provision was purely punitive and was not an attempt to cure and rehabilitate the defendant.

Certain cases were cited in appellants' brief concerning legislative acts which were vague and indefinite. The Barr-Walker Act is not vague and indefinite and, on the contrary, it does provide a very clear pro-

cedure for sentencing prisoners convicted of one of the crimes specifically mentioned in the act.

It is also argued that the act imposes a punishment for a condition, to wit: mental illness. The act does not, as did the act in *Robinson v. California*, 370 U.S. 660, 82 S. Ct. 1417, provide punishment for a condition, such as dope addiction. It does not make persons who are sex deviates guilty of a crime until they commit one of the overt acts specifically covered by the crimes mentioned in the act.

Attack is also made on the title of the act as failing to give proper notice of its contents. This subject has been discussed so many times in our courts that what was said by Mr. Justice STERN, later Chief Justice, in *McSorley v. Fitzgerald*, 359 Pa. 264, 272, 59 A. 2d 142, is apposite here: "As is not unusual in attempts to establish that a statute is unconstitutional, the final assault is made on the title of the Act, it being claimed that Article III, section 3 of the Constitution is violated because the subject-matter of the statute is not clearly expressed in the title. . . . It is elementary, however, that the title of an act need not, in order to comply with the constitutional requirement, be an index of its provisions or a synopsis of its contents; so long as it indicates the general subject to which all the provisions of the act are incidental or germane, it is sufficient:. . . ."

The title of the act is as follows: "An Act providing for the sentencing of persons convicted of certain crimes to an indeterminate sentence having a minimum of one day and a maximum of life in certain cases; authorizing the criminal courts to impose such a sentence and certain temporary confinement in connection therewith; requiring psychiatric examinations of such persons before the imposition of such a sentence; conferring powers and imposing duties upon the Department of Welfare and the Pennsylvania Board of Pa-

role; and providing for the parole and reparole or absolute discharge of persons so sentenced and the procedure relating thereto." An inquiring mind would be led from the title of this act into its body, if he were interested in sentences for certain crimes requiring psychiatric examination before the imposition of sentence. The mere fact that the crimes are not specifically mentioned in the title does not violate the constitutional provision. If one looks at the title of the original act of assembly, one will see immediately thereunder but in the side note on the right-hand side of the page, the following language: "Declaration of policy with respect to persons convicted of indecent assault and related crimes." Immediately under the title, in the third, fourth, fifth and sixth lines of the act, is specific mention of the crimes of indecent assault, incest, assault with intent to commit sodomy, solicitation to commit sodomy, sodomy, assault with intent to ravish or rape.

The act is not designed to apply to first offenders but is designed to apply to a person who "if at large, constitutes a threat of bodily harm to members of the public, or is an habitual offender and mentally ill. . . ." The word "habitual offender" certainly would cover the numerous acts of McFadden over the ten-year period and the provision relative to bodily harm to members of the public would certainly apply to both appellants.

The powers given to the Parole Board by the act are not arbitrary. It is required to act upon reports from the Department of Welfare every six months and it is required to give serious consideration to these reports. The act could not attempt to define in detail the psychiatric and psychological studies to be made by the Department of Welfare and its personnel.

It is true that if a prisoner is sentenced under a mistake of law or a mistake of important material

facts which are discovered after sentence and could not have been discovered by reasonable diligence before sentence, he may have a remedy by a writ of habeas corpus to correct such a sentence: *Com. ex rel. Elliott v. Baldi*, 373 Pa. 489, 493, 96 A. 2d 122. No such mistake either of law or fact was made by the court below in the sentence of these two prisoners.

The present attorneys, in their brief, stated that the court below "bases his sentence upon such report from the Department [of Welfare] without giving the defendant any opportunity to examine the same, learn of its contents, or to rebut any statements contained therein." This is simply not true. An examination of the record made at the time of imposition of the original sentences in these two cases will reveal that the court very carefully read to the attorneys and their clients the material portions of the reports received from the Department of Welfare. Not only did the court read these to them but asked them whether they had any further questions or wanted to make any further statements, and the trial attorneys indicated that they did not. The court also not only requested statements from the attorneys but also invited the defendants, their wives, mothers, etc., to say anything they wanted to say before the imposition of sentence. We do not see how a judge could have been more fair than he was in these cases.

In the Gerchman case the trial court not only considered the report of the Department of Welfare but also permitted the defendant, at the time of sentence, to place on the stand his own psychiatrist, Dr. Paul Blastos, and his testimony clearly reveals that Mr. Gerchman had not been cured of his condition and he recommended that Gerchman be given psychiatric treatment every week or two in an endeavor to correct his condition.

In the McFadden case the court not only took into consideration the report from the Department of Welfare but also permitted any additional testimony which the attorney for McFadden wanted to offer. He even permitted letters from witnesses for McFadden to be offered in evidence and permitted extensive testimony from McFadden himself.

Orders affirmed.

WOODSIDE, J., concurs in the result.