**UNITED STATES of America ex rel. Carl G. GERCHMAN, Appellant,**

v.

**James F. MARONEY, Superintendent State Correctional Institution, Pittsburgh, Pennsylvania.**

**No. 15221.**

United States Court of Appeals Third Circuit.

Argued June 18, 1965.

Decided Jan. 11, 1966.

**304**

Hymen Schlesinger, Pittsburgh, Pa., for appellant.

Joseph S. Walko, First Asst. Dist. Atty., Beaver, Pa., Robert J. Masters, Dist. Atty., Beaver County, Edward J. Tocci, Asst. Dist. Atty., Beaver County, Beaver, Pa., for appellee.

James M. Carter, Marjorie Hanson Matson, Pittsburgh, Pa., for Greater Pittsburgh Chapter, American Civil Liberties Union, amici curiæ.

Before McLAUGHLIN, STALEY and FREEDMAN, Circuit Judges.

FREEDMAN, Circuit Judge.

This appeal from the denial of a petition for a writ of habeas corpus raises grave constitutional problems regarding Pennsylvania's so-called Barr-Walker Act of January 8, 1952, P.L.1851, 19 Purdon's Pa.Stat.Annot. §§ 1166–1174.

I

THE BARR-WALKER ACT

The Act provides that if the court is of the opinion that a person who has been convicted before it of indecent assault, incest, assault with intent to commit sodomy, solicitation to commit sodomy, sodomy, assault with intent to ravish or rape, would, "if at large, constitute a threat of bodily harm to members of the public, or is an habitual offender and mentally ill", it may, "in lieu of the sentence now provided by law", sentence such person to a state institution for an indeterminate term, from one day to life. No such sentence shall be imposed until a complete psychiatric examination has been made of the defendant by or on behalf of the State Department of Welfare (now known as the Department of Public Welfare: See Act of April 9, 1929, P.L. 177, § 201, as amended, 71 Purdon's Pa.Stat.Annot. § 61), and a complete written report thereof has been submitted to the court. The court is authorized to postpone sentence and order the defendant to be temporarily confined so that the examination and report may be made. The report is required to include "all facts and findings necessary to assist the court in determining whether it shall impose sentence under the provisions" of the Act. If the court after receiving the report finds the convicted defendant to be in the specified category and is "of the opinion that it would be to the best interests of justice to sentence such person under the provisions" of the Act, it "shall cause such person to be arraigned * * and sentenced to such State institution as shall have been designated by the Department of [Public] Welfare in its report to the court".

Unlike the Barr-Walker Act, the Pennsylvania Habitual Offenders Act, which was already in force when the Barr-Walker Act was adopted, carefully delineates the rights of the accused and the duty of the court. The Habitual Offenders Act provides for greatly increased punishment, culminating in life imprisonment, for the repeated commission of certain specified crimes, including sodomy and incest,[1] and where life imprisonment is involved requires that the District Attorney file a formal complaint against the defendant. It imposes on the court the duty to inform the defendant of the allegations of the complaint and prescribes that a jury shall

---

1. The Penal Code of June 24, 1939, P.L. 872, § 1108, 18 Purdon's Pa.Stat.Annot. § 5108.

be empanelled to determine the issue of fact as to the defendant's identity.[2]

After a defendant is sentenced under the Barr-Walker Act the exclusive control over him rests with the Pennsylvania Board of Parole. "The Board is * * * authorized and empowered to parole and reparole, and commit and recommit for violation of parole, any person sentenced under the provisions of this act, at such time and under such conditions as the interest of justice may dictate." In determining on parole or reparole the Board is required to "give serious consideration to the original report and subsequent reports of the psychiatric and psychological examination of the person so sentenced, the recommendations contained in such reports, and the view of the committing court." While the defendant is confined the Board of Parole is required within three months after his sentence and at least every six months thereafter to have brought before it all reports, records and information concerning the defendant in order to determine whether he should be paroled and to make its ruling and to notify the defendant.

The Department of Public Welfare is required to provide psychiatric and psychological services to the Pennsylvania Board of Parole "in the further examination, diagnosis and treatment of persons sentenced under the provisions of [the] act, during their confinement and parole as hereinafter provided for."

## II

### THE FACTS

In the present case petitioner pleaded guilty on August 29, 1962 in the Court of Oyer and Terminer for Beaver County, Commonwealth of Pennsylvania, to an indictment containing separate counts charging assault with intent to ravish, indecent assault, aggravated assault and battery, and assault and battery.[3] At the time he pleaded guilty and throughout the proceeding, the petitioner was represented by counsel of his own choice.

The circumstances of the crime were pitiable and shocking. Petitioner by subterfuge attracted a retarded young woman into his automobile. He then drove her to a wood and when she refused to respond to his advances struck her in the face, tore off her clothing and tied her to a tree. He bit her breasts and branded the letter "k" on one of them with his penknife or a piece of broken glass. He then left her, but feeling repentant, returned about an hour later, untied her and gave her his shirt to wear. He buried her torn clothes and belongings in the ground and drove her back to town, warning her to say nothing about what had occurred.

At the time fixed for sentencing, October 10, 1962, a county detective testified to petitioner's confession and described his interviews with petitioner, the victim, and their families. Petitioner presented a psychiatrist who testified that he had

2. The Act prescribes the following procedure after service of the complaint on the defendant: "Thereupon the court * * * shall cause the said person * * * to be brought before it, and shall inform him of the allegations contained in such complaint and of his right to be tried as to the truth thereof according to law, and shall require such offender to say whether he is the same person as charged in such complaint or not. If he says he is not the same person, or refuses to answer, or remains silent, his plea or the fact of his silence shall be entered on record, and a jury shall be empanelled to inquire whether the offender is the same person mentioned in the sev-

eral records as set forth in such complaint. If the jury finds that he is the same person, or if he acknowledges or confesses in open court, after being duly cautioned as to his rights, that he is the same person, the court may sentence him to imprisonment for life * * *. Such sentence shall be reviewable on appeal by the Supreme or Superior Courts, not only as to alleged legal errors but also as to the justice thereof." Section 1108 (d), 18 Purdon's Pa.Stat.Annot. § 5108 (d).

3. It is not clear from the record whether he pleaded guilty to all of the counts in the indictment or only to the count charging assault with intent to ravish.

been treating petitioner weekly for two months, and that petitioner suffered from "depressive character" and had been on the brink of psychosis when the crime was committed, but that his "propensity to do wrong is much less than it was" before the crime was committed, because the impulse was no longer secret. He recommended continued weekly or biweekly visits to a psychiatrist of petitioner's choice. At the conclusion of the psychiatrist's testimony petitioner's counsel suggested that because of petitioner's mental condition the judge should conduct a further presentence investigation. The judge announced that he would invoke the Barr-Walker procedure, and a formal order was accordingly filed. It recited that the court had decided to avail itself of the Barr-Walker Act, postponed the imposition of sentence until the court had received the statutory reports, which it ordered made, and ordered petitioner confined meanwhile.

Two months later, on December 14, 1962, the parties appeared before the court once more. The judge had received the report of the Department of Public Welfare, which consisted of a letter signed by the Department's Commissioner of Mental Health, accompanied by a psychiatric report for the court's "confidential use", and a report on the presentence investigation. The transcript records what transpired.

"The Court: Mr. Critchfield, I suppose you do not know what the report actually is which I have from the Department. The pertinent part is this: 'Pursuant to your Order of October 10, 1962, the Defendant was examined. After fully considering all the available material in respect to this case, [the Department] finds that the above Defendant is not mentally ill and could, therefore, not profit by being committed to a mental institution. The Department further finds that the Defendant comes within the purview of the Barr-Walker Act, inasmuch as he constitutes a threat of bodily harm to members of the public if at large. We therefore respectfully recommend that Carl G. Gerchman be confined in a correctional institution after classification at the Western Correctional Diagnostic and Classification Center.' That is the pertinent part of the report. Do you have any comment? Is there anything you wish to say?

"Mr. Critchfield [Petitioner's Counsel]: No, I don't wish to add anything to that. I am sure Your Honor has considered everything.

"The Court: We have." The court then stated that it had carefully examined the psychiatric report and the presentence investigation, which included the results of investigations of the families of the victim and the defendant.

"Mr. Critchfield: I am sure the Court is aware of all the circumstances under which this crime was committed, and the man had been drinking, and the personality of the victim, and so forth.

"The Court: Now, Mr. Gerchman, do you have anything you wish to say to the Court why sentence should not be imposed in this case? Is there anything you want to say? Is there anything you want to say, Mr. Gerchman, why sentence should not be imposed, or anything you want to say in connection with this case? (No response.) He did not testify, Mr. Critchfield, so you had better make it amply clear to him that this is his day in Court and he may take the stand and testify if he wishes.

"Mr. Critchfield: Carl, you understand this is the day you are to be sentenced. If you have anything to say in regard to the crime itself or in regard to your sentence, this is your time to say it, and the Court wants to know whether you have anything to say at this time. You have the opportunity now to take the stand under oath and say anything you would like to say about that. Do you care to say anything?

"(Remark aside by Defendant to counsel.)

"Mr. Critchfield: He said he has nothing to say, Your Honor.

"The Court: Now, I see two women in the Court Room. I assume—

"Mr. Critchfield: That is the mother of the Defendant and his wife.

"The Court: Is there anything they want to say?

"Mr. Critchfield: Would you like to say anything, Mrs. Gerchman?

"Mrs. Gerchman (Wife): No.

"Mr. Critchfield: How about you, Mrs. Gerchman?

"Mrs. Gerchman (Mother): No."

The Court thereupon announced: "* * * [T]he Court being of the opinion Carl G. Gerchman, if at large, constitutes a threat of bodily harm to members of the public, and the Court being of the opinion that it would be to the best interests of justice to sentence Carl G. Gerchman under the provisions of the Act referred to, the sentence of the Court now is that the Defendant, Carl G. Gerchman, pay the costs of prosecution, a fine of $1.00, be committed to the Western Correctional Diagnostic and Classification Center to undergo imprisonment of not less than one day nor more than the term of the natural life of the said Carl G. Gerchman, and the Defendant is now committed to the custody of the Sheriff. * *"

"Mr. Critchfield: Thank you, Your Honor.

"(Whereupon, the Defendant was remanded to the custody of the Sheriff. Proceedings closed.)"

In 1963 petitioner sought his release by habeas corpus proceedings in the state courts. His petition was denied by the sentencing judge, before whom it came; the Superior Court affirmed, Commonwealth ex rel. Gerchman v. Maroney, 203 Pa.Super. 293, 201 A.2d 319 (1964), and an allocatur was refused by the Supreme Court of Pennsylvania. (See 204 Pa.Super. xl).[4] Having exhausted his State remedies, as required by 28 U.S.C. § 2254, petitioner applied for habeas corpus in the District Court, which denied his claim. (United States ex rel. Gerchman v. Maroney, 235 F.Supp.

588 (W.D.Pa.1964)), but granted a certificate of probable cause for appeal under 28 U.S.C. § 2253.

### III

#### THE STATUTORY STANDARD APPLIED TO PETITIONER

The Act was invoked and applied to petitioner after his conviction of the specified crime solely on the ground that he was a person who, if at large, would constitute a threat of bodily harm to members of the public. There was no charge or finding that he was an habitual offender and it was expressly stated by the Department of Public Welfare that he was not mentally ill. Petitioner asserts, therefore, that the Act may not be applied to him because it must be construed to deal only with habitual offenders. The reason for this claimed construction is not given to us but the result urged is that the Act should be read to apply to one who is convicted of a specified crime only if the court finds that he would constitute a threat of bodily harm to members of the public, if at large, and is an habitual offender and is mentally ill. This meaning would require the substitution of "and" for "or" in the statutory provision that the defendant must be a person who "if at large, constitutes a threat of bodily harm to members of the public, or is an habitual offender and mentally ill."

Were we to undertake to construe the Act, we would choose a different construction, which has more to recommend it. Mental illness would be deemed the fundamental test under the Act, modified in the alternative by the status of being either a threat of bodily harm to members of the public or an habitual offender. There would be no need to read "or" to mean "and", and two readily recognizable categories would exist for each of which the Act could be invoked: (1) if the court is of the opinion that any such person, "if at large, constitutes a threat of bodily harm to members of the public * * * and [is] mentally

4. See also the companion case of Commonwealth ex rel. Hoffman v. Maroney, 203

Pa.Super. 303, 201 A.2d 263 (1964), allocatur refused, 204 Pa.Super. xli.

ill"; (2) "or is an habitual offender and mentally ill." Indeed this construction would seem inevitable but for the comma which precedes the phrase "or is an habitual offender and mentally ill". Punctuation, however, is not permitted to affect the construction of a Pennsylvania statute, because, as is well known, Pennsylvania statutes are adopted without punctuation, which is inserted after the bill is passed. See concurring opinion in Pritchard v. Liggett & Myers Tobacco Co., 350 F.2d 479, 489–490 (3 Cir. 1965). This construction would give to the requirement of periodic psychiatric examinations a more understandable meaning.

■ We must, however, consider the constitutionality of the Pennsylvania statute as the state courts have acted upon it and thereby impliedly construed it.[5] They have applied it to petitioner solely on the basis that he constituted a danger of harm to the public, if at large, without any requirement that he must be an habitual offender or mentally ill. It is on this construction that we must measure the constitutionality of the proceedings against the petitioner.

### IV

### THE CONSTITUTIONAL CLAIMS PRESENTED

The petition for the writ here, as in the state court, claims numerous violations of petitioner's rights under the Fourteenth Amendment. At the outset petitioner urges that the proceedings against him under the Barr-Walker Act violated due process because he was not charged by indictment, he was denied the right to confront and cross-examine the witnesses against him, and he was denied the right to trial by jury. He also claims that the Act violates the due process clause because it imposes cruel and unusual punishment, is vague and uncertain, and confers arbitrary power on the Pennsylvania Board of Parole.

Finally, the amicus curiae urges that the Act violates the equal protection clause of the Fourteenth Amendment because its classification is without rational justification.

### V

### PETITIONER WAS DENIED PROCEDURAL DUE PROCESS

1. The proceedings conducted against petitioner afforded him no right to confront and cross-examine the witnesses against him.

■ Confrontation and the right of cross-examination are fundamental to the conception of a fair trial in Anglo-American law. In Pointer v. State of Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965), and Douglas v. State of Alabama, 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965), the Court recognized this right of a defendant under the Sixth Amendment as fundamental and essential to a fair trial and therefore obligatory on the states under the Fourteenth Amendment. "There are", said Mr. Justice Black, speaking for the Court in the Pointer case, "few subjects, perhaps, upon which this Court and other courts have been more nearly unanimous than in their expressions of belief that the right of confrontation and cross-examination is an essential and fundamental requirement for the kind of fair trial which is this country's constitutional goal. Indeed, we have expressly declared that to deprive an accused of the right to cross-examine the witnesses against him is a denial of the Fourteenth Amendment's guarantee of due process of law." (380 U.S., at 405, 85 S.Ct., at 1068). On the same day, in Douglas v. State of Alabama, supra, Mr. Justice Brennan, citing Pointer v. State of Texas, tersely said: "We decide today that the Confrontation Clause of the Sixth Amendment is applicable to the States." (380 U.S., at 418, 85 S.Ct. at 1076). In concurring, Mr. Justice Harlan thought that "a right of 'confrontation' [is] embodied in the concept of ordered liberty", (380 U.S. at 423, 85 S.Ct. at 1079),

5. E.g., Robinson v. State of California, 370 U.S. 660, 666, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962).

and Mr. Justice Stewart thought that its denial would "[deprive] \* \* \* [an accused] of his liberty without due process of law in violation of the Fourteenth Amendment". (Ibid.)[6]

■ These principles are applicable to petitioner and his rights therefore were violated by a determination made at a hearing at which the only evidence against him was the Commissioner's report to the court containing ultimate findings of fact based upon reports of a "confidential" psychiatric examination and a probation investigation. Neither the Commissioner nor those who reported to him appeared at the hearing. Petitioner had no opportunity to confront them, much less to cross-examine them regarding the findings of the Commissioner or the unsworn reports of the investigations on which they were based. Indeed, as far as the record shows petitioner learned of the conclusion reached from this so-called evidence only because the court volunteered to read it aloud at the hearing. The judicial finding based on this incompetent hearsay cannot be recognized without doing violence to the constitutional guarantee of due process.

2. It is argued, however, that while the right to confrontation and cross-examination may be clearly applicable to criminal trials, the proceeding against petitioner was not a trial and was not criminal in nature. Rather, it is said, it was a civil commitment for petitioner's benefit, or alternatively, a simple sentencing proceeding resulting from the conviction on the charge of assault with intent to ravish.

■ It is undoubtedly true that the guarantee of the right of confrontation and cross-examination does not apply to sentencing pursuant to a criminal conviction. Williams v. People of State of New York, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949). The rule has not yet been fully clarified as

to civil commitment proceedings. See Greenwood v. United States, 350 U.S. 366, 76 S.Ct. 410, 100 L.Ed. 412 (1956); State of Minnesota ex rel. Pearson v. Probate Court, 309 U.S. 270, 275–277, 60 S.Ct. 523, 84 L.Ed. 744 (1940); Compare Willner v. Committee on Character and Fitness, 373 U.S. 96, 103–104, 83 S.Ct. 1175, and concurring opinion, at 107–108 (1963). But the present case falls in neither of these categories because the Barr-Walker proceedings are criminal rather than civil in nature and constitute an essentially independent rather than a sentencing proceeding.

■■ The Act leaves no doubt, both in its language and its purpose, that it is a criminal statute and that what is imposed under its authority is criminal punishment. Its title and its text are replete with language which reveals that the proceeding is penal in nature. It may be invoked only after a precedent conviction of guilt of one of the specified crimes and prescribes a new and radically different punishment. A maximum sentence of life imprisonment is made mandatory and from it the defendant may only be released on the determination by the Pennsylvania Board of Parole that the "interest of justice" so dictates. It is true that the Act provides for periodic psychiatric and psychological examinations which the Board of Parole is to review. But it is no less a criminal proceeding and no less the infliction of criminal punishment because the Act provides for such studies, especially when this is accompanied by the drastic potential of life imprisonment if they do not affirmatively provide a basis for release. This criminal punishment does not lose its characteristic because the Act goes beyond simple retribution. "It would be archaic to limit the definition of 'punishment' [under the Bill of Attainder Clause] to 'retribution.' Punishment serves several purposes; retributive, rehabilitative, deterrent—and pre-

6. See also Greene v. McElroy, 360 U.S. 474, 496–497, 79 S.Ct. 1400, 3 L.Ed.2d 1377 (1959); Willner v. Committee on Character & Fitness, 373 U.S. 96, 103–104, 83 S.Ct. 1175, 10 L.Ed.2d 224 (1963); 5 Wigmore, Evidence (3d ed. 1940), § 1367.

ventive. One of the reasons society imprisons those convicted of crimes is to keep them from inflicting future harm, but that does not make imprisonment any the less punishment." United States v. Brown, 381 U.S. 437, 458, 85 S.Ct. 1707, 1720, 14 L.Ed.2d 484 (1965). See also Kennedy v. Mendoza-Martinez, 372 U.S. 144, 168–169, 83 S.Ct. 554, 9 L.Ed. 2d 644 (1963); Case Comment, 32 U. Chic.L.Rev. 290, 294–298 (1965).

■■ The effort of enlightened penology to alleviate the condition of a convicted defendant by providing some elements of advanced, modern methods of cure and rehabilitation and possible ultimate release on parole cannot be turned about so as to deprive a defendant of the procedures which the due process clause guarantees in a criminal proceeding. Indeed, we do not understand that the Superior Court of Pennsylvania in Commonwealth ex rel. Gerchman v. Maroney, 203 Pa.Super., at 298–299, 301, 201 A.2d 319, held that the Act was not penal in nature. But if it had so held we would feel compelled to refuse to follow it in fulfilling our independent responsibility to determine whether federally protected rights of petitioner have been invaded. See Cummings v. State of Missouri, 71 U.S. (4 Wall.) 277, 318–321, 18 L.Ed.

356 (1866); Thompson v. City of Louisville, 361 U.S. 199, 80 S.Ct. 624, 4 L.Ed. 2d 654 (1960); One 1958 Plymouth Sedan v. Com. of Pennsylvania, 380 U.S. 693, 85 S.Ct. 1246, 14 L.Ed.2d 170 (1965).

Since the Act is penal in nature, the cases dealing with the constitutionality of procedures for the commitment of insane persons on a theory of *parens patriae* [7] or sexual psychopaths without requiring a previous criminal conviction,[8] even if they would permit confinement without confrontation and cross-examination, are not analogous.[9] The basis on which the state trial court proceeded was within the contours of a criminal proceeding.

■ Nor can the failure to satisfy the requirements of due process be justified by the general principle that a judge has the widest discretion in sentencing and for this purpose may receive unsworn and even unauthenticated information, unrestricted by the rules of evidence. Williams v. People of State of New York, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949).[10] While the trial judge dealt most fairly with the petitioner if the proceeding is considered simply as a sentence for the crime to which he pleaded guilty, on the inde-

7. See, e.g., Greenwood v. United States, 350 U.S. 366, 76 S.Ct. 410, 100 L.Ed. 412 (1956), and the Pennsylvania Mental Health Act of June 12, 1951, P.L. 533, Art. III, §§ 326–345, as amended, 50 Purdon's Pa.Stat.Annot. §§ 1201–1225; Commonwealth v. Bechtel, 384 Pa. 184, 120 A.2d 295 (1956).

8. See, e.g., State of Minnesota ex rel. Pearson v. Probate Court, 309 U.S. 270, 60 S.Ct. 523, 84 L.Ed. 744 (1940).

9. Even within this area there have been growing expressions of dissatisfaction. See, e.g., People ex rel. Baxstrom v. v. Herold, 21 A.D.2d 754, 251 N.Y.S.2d 938, leave to appeal denied, 14 N.Y.2d 490, 253 N.Y.S.2d 1028, 202 N.E.2d 159 (1964), upholding constitutionality of New York's commitment procedures on completion of sentence; cert. granted, 381 U.S. 949, 85 S.Ct. 1810, 14 L.Ed.2d 723 (1965). See also Case Comment, 75 Harv.L.Rev. 847 (1962).

10. The now well-known presentence investigation and report is a recent development within this framework. Fed.R. of Crim.P. 32(c) provides for a presentence investigation and report to the court by the probation service. There is increasing uneasiness regarding the existing rule that the presentence report need not be made known to the defendant, who might be able to show factual errors in the report. See 4 Barron & Holtzoff, Federal Practice & Procedure (1964 Supp., Wright, ed.) § 2265, and citations therein. There have also been proposals for broadened appellate review of sentencing so as to establish more objective and therefore less personal, judicial standards. See, e. g., Note, Appellate Review of Sentencing Procedure, 74 Yale L.J. 379 (1964); S. 2722, 89th Cong., 1st Session (1965), reprinted at 111 Cong.Rec. A6287; Extension of Remarks of Senator Hruska, 111 Cong.Rec. A6285 (1965); 1964 Reports of the Proceedings of the Judicial Conference of the United States 86.

pendent examination which we are required to make (see Chandler v. Fretag, 348 U.S. 3, 7, 75 S.Ct. 1, 99 L.Ed. 4 (1954); One 1958 Plymouth Sedan v. Com. of Pennsylvania, 380 U.S. 693, 85 S.Ct. 1246, 14 L.Ed.2d 170 (1965)), it is clear beyond doubt that the penal proceeding authorized by the Act is essentially independent of the conviction which is a prerequisite but subordinate element.

The punishment which the court imposed followed upon the court's invocation of an additional statutory proceeding, and it followed from the court's determination that the petitioner "if at large, constitutes a threat of bodily harm to members of the public" and its opinion "that it would be to the best interests of justice to sentence such person" pursuant to the Act. The court thus made a new factual finding which went substantially beyond the finding of guilt of assault and battery with intent to ravish. This new finding alone authorized and required the indeterminate sentence of imprisonment for a minimum term of one day and a maximum term of life, instead of the maximum term of imprisonment for five years which is prescribed for assault with intent to ravish.[11] This is much enlarged punishment for an essentially independent criminal offense. See Comment, 13 U.Pitts.L.Rev. 739, 741–742 (1952).

The same factors, i. e., imposition of greater punishment than that provided for conviction of a constituent element after an additional finding of fact, led the Supreme Court to hold in Chandler v. Fretag, 348 U.S. 3, 75 S.Ct. 1, 99 L. Ed. 4 (1954) and Oyler v. Boles, 368 U. S. 448, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962), that the habitual offenders acts

there involved, which provided for increased criminal punishment because of prior convictions, created essentially independent criminal offenses. This required that the determination of the issues of fact involved in the statutory proceedings must conform to the constitutionally guaranteed safeguards of due process in substantive criminal trials. In Oyler, the Court said: "Even though an habitual criminal charge does not state a separate offense, the determination of whether one is an habitual criminal is 'essentially independent' of the determination of guilt on the underlying substantive offense. Chandler v. Fretag, 348 U.S. 3, 8 [75 S.Ct. 1, 99 L.Ed. 4] (1954). * * * [A] defendant must receive reasonable notice and an opportunity to be heard relative to the recidivist charge even if due process does not require that notice be given prior to the trial on the substantive offense." (368 U.S., at 452, 82 S.Ct. at 503). If the determination of the independent issue in Oyler, limited as it was to judicial records and identity, made the new charge separate from the subordinate offense and thus required full due process, it is surely required here, where the critical new issue, i. e., whether petitioner, if at large, would constitute a danger of bodily harm to the public, is a complex and personal one going far beyond mere records and identification. Similarly, in Kennedy v. Mendoza-Martinez, 372 U.S. 144, 83 S.Ct. 554, 9 L. Ed.2d 644 (1963), the Court held that due process was denied by the application to one convicted of draft evasion of the provision of the Nationality Act of 1940 for the automatic denationalization of one departing from or remaining outside the United States to evade military

---

11. The Penal Code of June 24, 1939, P.L. 872, § 722, 18 Purdon's Pa.Stat. Annot. § 4722. If petitioner's guilty plea applied to all four charges, the longest term of imprisonment still would be five years. Indecent assault is punishable as an assault and battery but requires absence of an intent to rape (see Commonwealth v. Shrodes, 354 Pa. 70, 46 A.2d 483 (1946)), § 708 of the Penal

Code, 18 Purdon's Pa.Stat.Annot. § 4708. It is therefore mutually exclusive with a conviction and sentence for assault with intent to ravish. The other charges here were merged with the charge of assault with intent to ravish. See Commonwealth v. Soudani, 398 Pa. 546, 159 A.2d 687 (1960), cert. denied, 364 U.S. 886, 81 S. Ct. 177, 5 L.Ed.2d 107 (1960).

service.[12] The Court pointed out that denationalization was a penal proceeding and that the element of departure from or remaining outside the United States was not included in the conviction of draft evasion. The denationalization proceeding was therefore held sufficiently independent of the draft evasion conviction to require a "criminal trial and all its incidents, including indictment, notice, confrontation, jury trial, assistance of counsel, and compulsory process for obtaining witnesses". (372 U.S., at 167, 83 S.Ct. at 567). Like Mendoza-Martinez, Gerchman was never given a full trial, including the right to confrontation and cross-examination on the evidence underlying the new finding which was essential to the Barr-Walker sentence.

The evidence necessary to establish an essentially independent element was, moreover, received here not to aid in any discretionary determination, but rather to arrive at a finding of fact after which a mandatory punishment followed in which the court had no discretion. This is entirely unlike a sentencing procedure, where the constitutional safeguards are inapplicable. There the judge exercises a broad discretion in fixing punishment within wide boundaries after consideration of individual and personal factors made available to him without regard to the restrictions of the rules of evidence.[13]

■■■ The proceeding under the Barr-Walker Act is thus neither a civil commitment nor a sentence within the meaning of Williams. It is a separate criminal proceeding which may be invoked after conviction of one of the specified crimes. Petitioner therefore was entitled to a full judicial hearing before the magni-

fied sentence was imposed. At such a hearing the requirements of due process cannot be satisfied by partial or niggardly procedural protections. A defendant in such a proceeding is entitled to the full panoply of the relevant protections which due process guarantees in state criminal proceedings. He must be afforded all those safeguards which are fundamental rights and essential to a fair trial, including the right to confront and cross-examine the witnesses against him. Pointer v. State of Texas, supra; Douglas v. State of Alabama, supra.

■■■ 3. The infringement of petitioner's rights cannot be deemed to have been waived by the failure of his counsel to complain, in the circumstances which faced him at the time. There is no indication here that counsel deliberately withheld raising the question as a matter of trial strategy or for any similar reason. Compare Henry v. State of Mississippi, 379 U.S. 443, 451, 85 S.Ct. 564, 13 L.Ed.2d 408 (1965). Waiver classically requires "an intentional relinquishment or abandonment of a known right or privilege". Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938). Here the trial court, the District Attorney and the Department of Public Welfare as well as petitioner's counsel followed an accepted practice. They therefore viewed the proceeding as a hearing on sentence and the report transmitted by the Commissioner of Mental Health as information furnished to a sentencing judge for use in the exercise of his discretionary power to decide on the appropriate sentence. In submitting to this apparently well established pattern of procedure peti-

---

12. § 401(j), added in 1944, 58 Stat. 746, later § 349(a) (10) of the Immigration and Nationality Act of 1952, 66 Stat. 163, 267-268, 8 U.S.C. § 1481(a) (10).

13. "A sentencing judge is not confined to the narrow issue of guilt. His task within fixed statutory or constitutional limits is to determine the type and extent of punishment after the issue of guilt has been determined. Highly relevant —if not essential—to his selection of an appropriate sentence is the possession of the fullest information possible concerning the defendant's life and characteristics. And modern concepts individualizing punishment have made it all the more necessary that a sentencing judge not be denied an opportunity to obtain pertinent information by a requirement of rigid adherence to restrictive rules of evidence properly applicable to the trial." Williams v. People of State of New York, 337 U.S. 241, 247, 69 S.Ct. 1079, 1083, 93 L.Ed. 1337 (1949).

tioner's counsel cannot be said to have waived the rights which he would have known were his if the proceeding had been viewed in its true nature. To have insisted that state officials, psychiatrists and probation officers should be required to journey to the courtroom to reiterate to a judge apparently engaged in sentencing what already appeared in their reports would have been considered harmful to his client's best interest by any counsel who believed the procedure to be proper. Compare Reeves v. Warden, Maryland Penitentiary, 346 F.2d 915, 927 (4 Cir. 1965); United States ex rel. Clark v. Maroney, 339 F.2d 710 (3 Cir. 1965).

We conclude, therefore, that petitioner's commitment is invalid, because his constitutional rights were violated by the failure to afford him the opportunity to confront and cross-examine the witnesses against him.

4. Petitioner also urges that due process was violated by the denial of the right to trial by jury.[14] What we have already said makes it clear that the guarantee of jury trial would apply to a Barr-Walker proceeding if the Fourteenth Amendment makes it applicable in state criminal cases. The significant problem, therefore, is whether the right to trial by jury, guaranteed as it is by the Sixth Amendment, is within the protection of the Fourteenth Amendment prohibition against deprivation of liberty without due process of law. There have been many statements in decisions of the Supreme Court[15] and this court[16] that the right to trial by jury in state criminal cases is not federally protected. They are not, however, flatly decisive of the question, especially in the light of the recent decisions which have held that the Fourteenth Amendment guarantees in state criminal proceedings the right of a defendant to be heard by counsel,[17] to confront and cross-examine the witnesses against him,[18] and to freedom from compulsory self-incrimination.[19]

Palko v. State of Connecticut, 302 U.S. 319, 58 S.Ct. 149, 82 L.Ed. 288 (1937), is the leading case expressing the view that the Fourteenth Amendment does not guarantee the right to trial by jury in state court proceedings, although the expression was dictum since the case involved double jeopardy. Cf. United States ex rel. Hetenyi v. Wilkins, 348 F.2d 844, 860 (2 Cir. 1965). In the now classic language of Mr. Justice Cardozo: "The right to trial by jury and the immunity from prosecution except as the result of an indictment may have value and importance. Even so, they are not of the very essence of a scheme of ordered liberty. To abolish them is not to violate a 'principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.' * * * Few would be so narrow or provincial as to maintain that a fair and enlightened system of justice would be impossible without them." (302 U.S., at 325, 58 S.Ct., at 152).

14. See Commonwealth v. Page, 339 Mass. 313, 159 N.E.2d 82 (1959), holding Massachusetts' commitment of convicts without right to trial by jury under its sexual deviates statute a denial of due process; People v. Frontczak, 286 Mich. 51, 281 N.W. 534 (1938), holding deprivation of jury trial unconstitutional under Michigan's constitutional provisions.

15. See Frankfurter, Memorandum on "Incorporation" of the Bill of Rights into the Due Process Clause of the Fourteenth Amendment, 78 Harv.L.Rev. 746, 760–764 (1965), in which the cases are collected.

16. E.g., United States ex rel. Tillery v. Cavell, 3 Cir., 294 F.2d 12, 19 (1961), cert. denied, 370 U.S. 945, 82 S.Ct. 1589,

8 L.Ed.2d 811 (1962); Application of Tune, 3 Cir., 230 F.2d 883 (1956).

17. Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), overruling Betts v. Brady, 316 U.S. 455, 62 S.Ct. 1252, 86 L.Ed. 1595 (1942).

18. Douglas v. State of Alabama, supra; Pointer v. State of Texas, supra, overruling West v. State of Louisiana, 194 U.S. 258, 24 S.Ct. 650, 48 L.Ed. 965 (1904) and Stein v. People of State of New York, 346 U.S. 156, 73 S.Ct. 1077, 97 L.Ed. 1522 (1953).

19. Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964), overruling Twining v. State of New Jersey, 211 U.S. 78, 29 S.Ct. 14, 53 L.Ed. 97 (1908).

A requirement of indictment has indeed fallen away in modern times in many circumstances and is not required by the Fourteenth Amendment.[20] It is also true that in many enlightened systems of justice there is no right to trial by jury. Nevertheless, it is clear that the right of a citizen to the protection of the due process clause of the Fourteenth Amendment is not to be measured by what may be fair and enlightened in the practice of another country in judicial proceedings whose fundamental structure differs radically from ours. The right must be weighed within the framework of the system of administering justice universally recognized in this country. Its absence in countries which employ an investigatory rather than an adversary system, whatever may be their relative merits, furnishes no evidence of an answer to the question whether it is so deeply rooted in the conceptions of liberty and justice which lie at the base of our civil and political institutions that it must be ranked as fundamental. See

Gideon v. Wainwright, supra, 372 U.S., at 341, 344, 83 S.Ct. 792.

It is in our adversary system that the right to trial by jury was nourished and developed. "England, from whom the Western World has largely taken its concepts of individual liberty and of the dignity and worth of every man, has bequeathed to us safeguards for their preservation, the most priceless of which is that of trial by jury. This right has become as much American as it was once the most English." Irvin v. Dowd, 366 U.S. 717, 721, 81 S.Ct. 1639, 1642, 6 L. Ed.2d 751 (1961).[21] Its universal acceptance in criminal cases in this country is embodied in constitutional guarantees in every state in the United States.[22] It is twice guaranteed in the Federal Constitution. Art. III, § 2, cl. 3, and the Sixth Amendment. Pennsylvania has from the earliest day recognized the right of trial by jury in criminal proceedings; it is expressed in the present Constitution of 1874, P.S.[23] and has existed since the founding of the Commonwealth.[24]

20. Hurtado v. People of State of California, 110 U.S. 516, 4 S.Ct. 111, 292, 28 L.Ed. 232 (1884).

21. "Upon these accounts the trial by jury ever has been, and I trust ever will be looked upon as the glory of the English law. And if it has so great an advantage over others in regulating civil property, how much must that advantage be heightened when it is applied to criminal cases! But this we must refer to the ensuing book of these commentaries: only observing for the present, that it is the most transcendent privilege which any subject can enjoy, or wish for, that he cannot be affected either in his property, his liberty, or his person, but by the unanimous consent of twelve of his neighbors and equals. A constitution that I may venture to affirm has, under Providence, secured the just liberties of this nation for a long succession of ages. And therefore a celebrated French writer [Montesquieu], who concludes that because Rome, Sparta and Carthage have lost their liberties, therefore those of England in time must perish, should have recollected that Rome, Sparta, and Carthage, at the time when their liberties were lost, were strangers to the trial by jury." 3 Blackstone's Commentaries *379.

22. See Turner v. State of Louisiana, 379 U.S. 466, 471, 85 S.Ct. 546, 13 L.Ed.

2d 424 (1965); Frankfurter, op. cit. supra, at note 15, at 768–783.

23. Article I, § 6, provides: "Trial by jury shall be as heretofore, and the right thereof remain inviolate."
   Article I, § 9, provides: "In all criminal prosecutions the accused hath a right * * * in prosecutions by indictment or information [to] * * * a speedy public trial by an impartial jury of the vicinage; he cannot be * * * deprived of his life, liberty or property, unless by the judgment of his peers or the law of the land."
   These provisions raise a serious possibility that the denial by Pennsylvania of the right to trial by jury to sexual offenders in what is a criminal proceeding would constitute an arbitrary classification invalid as offensive to the equal protection clause of the Fourteenth Amendment. Compare Note, Recidivist Procedures, 40 N.Y.U.L.Rev. 332, 347–48 (1965); cf. In re Trummer, 60 Cal. 2d 658, 36 Cal.Rptr. 281, 388 P.2d 177 (1964); United States ex rel. Carroll v. McNeill, 294 F.2d 117 (2 Cir.1961), vacated as moot, 369 U.S. 149, 82 S.Ct. 685, 7 L.Ed.2d 782 (1962).

24. See Laws Agreed Upon in England (1682), § VIII, reprinted in 5 Thorpe, The Federal and State Constitutions

Since we hold that a new trial is required in any case and that the Act states an essentially independent crime, we believe it appropriate that we refrain from deciding at this time whether the right to trial by jury is protected in state criminal proceedings by the Fourteenth Amendment. Because of Pennsylvania's historical concern for the right to trial by jury, Pennsylvania courts should determine in the first instance petitioner's right to trial by jury if the Barr-Walker Act is again invoked against him. If called upon to make this determination the state court will, of course, consider both the scope of the guarantee in the Pennsylvania constitution and the applicability to state proceedings of the federal guarantee of the right to trial by jury.

In confiding this determination to the state courts we adhere to the fundamental principle that we should not enter upon the decision of a constitutional question unless it is essential that we do so. See e. g., Brandeis. J., concurring in Ashwander v. T. V. A., 297 U.S. 288, 346–347, 56 S.Ct. 466, 80 L.Ed. 688 (1936). This is especially appropriate here, where constitutional doctrine is rapidly evolving, and it is not unlikely that we may soon have an authoritative expression on the subject from the Supreme Court.

## VI

### SUBSTANTIVE CLAIMS THAT THE ACT IS CONSTITUTIONALLY INVALID ON ITS FACE

There remain for consideration a number of important substantive constitutional challenges to the validity of the Barr-Walker Act on its face. Of course, if it clearly appeared on the record before us that the Act is for any of these reasons unconstitutional on its face it would be our duty so to pronounce. But the objections are in some instances clearly inadequate and the remainder are of such a nature that they may be more fully explored and determined on a complete record which will be made if the Commonwealth decides to prosecute petitioner anew under the Barr-Walker Act. In that event petitioner will have ample opportunity to raise these objections in the state courts in what will essentially be a trial rather than as they have now come to us, in the framework of a hearing on a sentence. The state courts will also be afforded an opportunity to consider the claims made by petitioner in the light of our present holding that for federal constitutional purposes the proceeding is an essentially independent criminal proceeding rather than a simple sentence. Finally, if the Commonwealth should invoke the Barr-Walker Act and the result should be adverse to petitioner, any federal constitutional claims which he will have pressed unsuccessfully in the state courts would, of course, be renewable in the federal courts, which would then have the benefit of a full record made in an adversary proceeding.

## VII

### CONCLUSION

The order of the District Court will be vacated with direction to enter an order granting the petition but withholding issuance of the writ for a period of 60 days, within which time the Commonwealth of Pennsylvania may apply for review of this decision or proceed de novo against petitioner under the Barr-Walker Act.

STALEY, Circuit Judge (concurring).

■ I concur in the result reached by my Brother Freedman that petitioner

(1909), pp. 3059, 3060; Constitution of 1776, Declaration of Rights § IX; Constitution of 1790, Art. IX, §§ 6, 9; Constitution of 1838, Art. IX, §§ 6, 9.

**316**

was denied due process. I agree that he was denied the right to confront and cross-examine his accusers. Pointer v. State of Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965); Douglas v. State of Alabama, 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965). I further agree "that petitioner's commitment is invalid, because [these] * * * constitutional rights were violated." However, I cannot accede to the disposition made of petitioner's argument that he was denied his right to trial by jury. My Brother Freedman refrains from deciding the issue of whether the Fourteenth Amendment requires a trial by jury in state criminal proceedings. The Supreme Court has explicitly ruled that he has no such right. Fay v. People of State of New York, 332 U.S. 261, 288, 67 S.Ct. 1613, 91 L.Ed. 2043 (1947); Snyder v. Com. of Massachusetts, 291 U.S. 97, 105, 54 S.Ct. 330, 78 L.Ed. 674 (1934); Jordan v. Com. of Massachusetts, 225 U.S. 167, 176, 32 S.Ct. 651, 56 L.Ed. 1038 (1912); Maxwell v. Dow, 176 U.S. 581, 602–603, 20 S.Ct. 494, 44 L.Ed. 597 (1900); Application of Tune, 230 F.2d 883, 886 (C.A.3, 1956).

McLAUGHLIN, Circuit Judge (concurring).

Appellant was denied due process in that he was denied the right to confront and cross-examine his accusers. Solely because of this violation of his constitutional rights his commitment is invalid. I therefore agree that the order of the district court be vacated and that a reasonable time be allowed the Commonwealth of Pennsylvania to take further appellate steps in this cause or to proceed with a new trial of appellant on the merits. I specifically disagree with the proposition that there is any question in this case whether appellant was entitled to a jury trial. As Judge Staley has shown, he had no such right.