Commonwealth *v.* Pifer, Appellant.

*Menno B. Rohrer,* for appellant.

*Henry J. Rutherford,* Assistant District Attorney, for Commonwealth, appellee.

OPINION PER CURIAM, September 11, 1969:
Order affirmed.

———

DISSENTING OPINION BY HOFFMAN, J.:

On August 8, 1962, appellant pleaded guilty to bills charging him with public indecency, indecent assault, and assault with intent to ravish. Before he was sentenced, a commission was appointed to examine appellant in accordance with the Act of May 25, 1937, P.L. 808, §3, as amended (repealed) [hereafter referred to

as the "Dallas Act"].[1] Notice of this examination was given to appellant, his mother and stepfather. Appellant was found to be "mentally defective" and was committed to the State Correctional Institution at Dallas until further order of the court.

Thereafter, the Superintendent at Dallas requested that appellant be transferred under the Act of May 31, 1919, P.L. 356, §1, as amended, 61 P.S. §81.[2] An-

---

[1] Formerly 61 P.S. §541-3. This Act is variously known as the "Huntingdon Act" and the "Dallas Act." The Act of July 29, 1953, P. L. 1440, §6, 61 P.S. §542.6, made 61 P.S. §541-3 applicable to Dallas. For convenience, I shall refer to the Act as the "Dallas Act." "When any male person over the age of fifteen years is convicted of crime before any court . . . and such person is, in the opinion of the . . . superintendent . . . of the institution where maintained, so mentally defective that he should be cared for and maintained in the [State Correctional Institution (at Dallas)], such superintendent . . . shall make application . . . to the court having jurisdiction of the charge against such person, which court, upon the presentation of such petition . . . shall order an inquiry by a psychiatrist and a psychologist or by two qualified physicians as now provided by law, who shall immediately examine the said person and make written report of its findings to the court. If, in the opinion of the psychiatrist and psychologist or the physicians, the person so committed or convicted or held is mentally defective and has criminal tendencies, whether or not coupled with mental instability, he or they shall so state in the report of their examination to the court. The court may, in its discretion, summon other witnesses and secure further evidence. If the court is then satisfied that the person thought to be mentally defective is not insane, nor can be classified as an idiot or imbecile by recognized psychological tests nor a psychopath or an infirmary case, though in fact mentally defective with criminal tendencies, the court shall order the commitment or transfer of such person to the [State Correctional Institution (at Dallas)]. . ."

[2] "Whenever any convict or person is confined in any . . . penal institution, under conviction or sentence of a court, . . . and it is shown to a court of record by due proof that such convict or person is seriously ill, and that it is necessary that he or she be removed from such penal institution, the court shall have power to . . . provide for the confinement or care of such convict or person in some other suitable institution where proper treatment

other commission was appointed to examine appellant, apparently in accordance with The Mental Health Act of 1951, Act of June 12, 1951, P.L. 533, art. III, §327, as amended (repealed).[3] Notice was again given to

may be administered. Upon the recovery of such person, the court shall recommit him or her to the institution from which he or she was removed."

[3] Formerly 50 P.S. §1202:

"(a) Whenever petition is made to a court for an order for the commitment of any person thought to be mentally ill to a hospital, the court may immediately appoint a commission to inquire into and report upon the facts in the case.

"(b) Such commission shall be composed of three persons, two qualified physicians and an attorney-at-law, who shall prepare and file all necessary notices, reports and other papers. Each member of the commission shall receive a fee consistent with the prevailing scale in the county, as determined by the court, for the time he is necessarily employed in the duty of his appointment.

"(c) The commission shall hear such evidence as may be offered or as they may require relating to the mental condition of the person sought to be committed, as well as his or his counsel's statement. If such person shall refuse to submit to an examination before the commission, the court may issue a warrant to bring him before the commission for examination.

"(d) The commission shall make a written report to the court setting forth whether or not they find that the patient is in fact mentally ill and a proper subject for commitment to a hospital, and the facts on which their conclusion is based."

The commission should have met in accord with the Mental Health and Mental Retardation Act of 1966, Acts of October 20, 1966, Special Sess. No. 3, P.L. 96, No. 6, art. IV, §411, 50 P.S. §4411 (Supp. 1969):

"(a) Whenever a person undergoing sentence and retained in a penal or correctional institution, is believed to be mentally disabled so that his commitment to a facility is necessary, a petition for such commitment may be presented to the court which imposed sentence. The petition may be made by the warden or other officer in charge of the detaining institution or counsel for the person so sentenced.

"(b) To assist in determining the questions raised by the petition, the court may adopt one or any combination of the procedures set forth in section 408(b)."

appellant, his mother and stepfather. Appellant was represented by his present counsel. Appellant was found to be "mentally ill and of criminal tendency" and was committed to Farview State Hospital.

Appellant, however, is still subject to his Dallas commitment, because under the Mental Health and Mental Retardation Act of 1966, he will be returned to Dallas or a like penal institution when it is determined that his condition no longer warrants commitment at Farview. Act of October 20, 1966, Special Sess. No. 3, P.L. 96, No. 6, art. IV, §411, 50 P.S. §4411 (Supp. 1969).

Appellant filed a P.C.H.A. petition, attacking his Dallas commitment on the grounds that he was denied due process of law. The P.C.H.A. court denied his petition without a hearing. This appeal followed.

Appellant's indeterminate commitment, pursuant to a second proceeding under the "Dallas Act," is criminal punishment, *Commonwealth v. Williams,* 432 Pa. 44, 61, 246 A. 2d 356 (1968), which could possibly exceed the fixed maximum he might otherwise have

---

§408(b), 50 P.S. §4408(b) (Supp. 1969), reads as follows:

"(1) Appoint two or more physicians to examine the person in the detaining institution and make a report as to whether he is mentally disabled and whether his commitment is necessary.

"(2) Appoint a commission consisting of two physicians and an attorney which shall examine such person in the detaining institution and in addition, receive any other evidence from any source bearing upon the questions of whether the person is mentally disabled and whether his commitment is necessary.

"(3) Appoint an attorney to represent such person with reference to the petition.

"(4) Hold a hearing which may be public or private. Appropriate notice thereof shall be given to all interested parties including the attorney for the Commonwealth. The presence of the person whose commitment is sought, may be compelled."

For the present purposes, the apparent error is of no consequence.

received. Accordingly, the procedure for commitment under the "Dallas Act" is governed by the rules of *Specht v. Patterson,* 386 U.S. 605 (1967), and *Commonwealth v. Dooley,* 209 Pa. Superior Ct. 519, 232 A. 2d 45 (1967).

In *Specht* and *Dooley,* persons convicted of crimes were subjected to a second proceeding under sexual offender acts, and sentenced to indeterminate terms designated as criminal punishment.

The Court in *Specht* quoted *Gerchman v. Maroney,* 355 F. 2d 302, 312 (3rd Cir. 1966) for the rule applicable to such proceedings: " 'It is a separate criminal proceeding which may be invoked after conviction of one of the specified crimes. Petitioner therefore was entitled to a full judicial hearing before the magnified sentence was imposed. At such a hearing the requirements of due process cannot be satisfied by partial or niggardly procedural protections. A defendant in such a proceeding is entitled to the full panoply of the relevant protections which due process guarantees in state criminal proceedings. He must be afforded all those safeguards which are fundamental rights and essential to a fair trial. . . .' " *Specht v. Patterson,* supra at 609-610.

The Court amplified the *Gerchman* rule as follows: "Due process, in other words, requires that he be present with counsel, have an opportunity to be heard, be confronted with witnesses against him, have the right to cross-examine, and to offer evidence of his own. And there must be findings adequate to make meaningful any appeal that is allowed." *Id.* at 610.

Hence it is incumbent upon us to determine whether appellant's commitment violated the principles set forth in *Specht* and *Dooley.* The record, however, in this case is silent on this question. We have no notes of testimony before us. Rather, the only evidence presented to the P.C.H.A. court, which denied appellant's

130

claim without a hearing, is appellant's commitment papers to Farview. It is impossible therefore to pass on appellant's due process claims without testimony which would establish whether appellant was permitted to testify, to confront the witnesses against him, to cross-examine those witnesses, and to offer evidence of his own.

I would remand this case to the lower court for the taking of testimony and findings consistent with this opinion.

SPAULDING, J., joins in this dissenting opinion.